The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF BACA, Plaintiff–Appellee,

v.

WHITE AND WELCH CO., a partnership, Defendant–Appellant,

and

State of Colorado, Department of Natural Resources, Division of Wildlife, successors to the Division of Game, Fish and Parks, Defendant–Appellee.

No. 86CA0348.

Colorado Court of Appeals, Div. VI.

March 3, 1988.

Schmidt and Schmidt, Mark H. Schmidt, Springfield, for plaintiff-appellee.

Opperman & Associates, P.C., Marlin D. Opperman, William M. Schell, Denver, for defendant-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Adonis A. Neblett, Asst. Atty. Gen., Denver, for defendant-appellee.

SILVERSTEIN\*, Judge.

Defendant White and Welch Co. (W & W), a partnership, appeals an adverse judgment awarding to plaintiff, Board of County Commissioners of Baca County (Baca), title to a roadway which crossed W & W's land, which title Baca claimed by adverse use by the public for a period of twenty years, pursuant to § 43–2–201(1)(c), C.R.S. (1984 Repl.Vol. 17). We affirm.

### I.

Section 43–2–201(1)(c), C.R.S. (1984 Repl. Vol. 17) provides:

"(1) The following are declared to be public highways:

. . . .

"(c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of said land for twenty consecutive years...."

In *Board of County Commissioners v. Flickinger*, 687 P.2d 975 (Colo.1984), the supreme court held that the party claiming a public highway by adverse use must prove "(1) members of the public must have used the road under a claim of right and in a manner adverse to the landowner's property interest; (2) the public must have used the road without interruption for the statutory period of twenty years; and (3) the landowner must have had actual or implied knowledge of the public use of the road and made no objection to such use." W & W contends that Baca failed to prove all three of those elements. However, the record discloses that all of the criteria were proved.

The evidence establishes, and the trial court found, that: (1) from the late 1920's until 1980, when the road was closed, the road was frequently used by sportsmen, picnickers, farmers, and others to reach Two Buttes Reservoir and the stores located by the dam, as well as by law enforcement officers in the exercise of their duties; and (2) the use was continuous from the late twenties until the fall of 1949 and later years, when the road was temporarily closed to vehicles, but not to pedestrians, to protect motorists from hunters during the hunting season.

The evidence further shows that there were unlocked gates at the boundaries of W & W's land, and that the gates were installed to keep the landowner's cattle from straying, and not to prevent use of the road. Also, there was no evidence that anyone using the road asked for or received permission to use the road, and there was no evidence that the landowner ever objected to the use of the road.

These facts, and the legal conclusions to be reached therefrom, are not analytically distinguishable from those in *Flickinger, supra,* which held, under similar facts, that adverse use had been established. *See Board of County Commissioners v. Ogburn,* 38 Colo.App. 212, 554 P.2d 700 (1976).

### II.

In 1947, the then landowner granted a ten-year lease to the Colorado Division of Game, Fish and Parks, the predecessor of

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S. (1982 Repl.Vol. 10).

the Division of Wildlife. Similar leases were executed thereafter until September 1, 1980, except from May 1, 1959, to September 1, 1959, and from September 1, 1971 to September 1, 1974.

W & W contends that the granting of the lease changed any adverse use to permissive use, and that Baca county as an agency of the State of Colorado cannot adversely claim a right possessed by another agency of the state. Because of the nature of the leases, we find no merit to these contentions.

### A.

The original lease, as well as the subsequent leases, was a non-exclusive, limited purpose lease. The lease provided that it was granted to the Division of Wildlife for the "sole use and purpose of conducting a controlled hunting program by the lessee for ducks, geese and other wild fowl ... and lessee ... agrees to use and occupy only so much of the surface of said area as may be necessary for the actual administration, policing and patrol thereof in accordance with its aforesaid wild-life program." The lease also gives the lessee the right to supervise and patrol during the hunting season. The only reference to the road in the lease is the permission given to the lessee to install cattle guards at the boundary lines of the leased land.

Thus, except for the right to limit the use of the road during the hunting season for safety reasons, the lessee had no authority either to grant or deny to the public the right to use the road. We conclude, therefore, that the adverse character of the use was not altered by the granting of the lease.

### B.

Even if we assume, *arguendo*, that one state agency cannot acquire by adverse use a right possessed by another state agency, that doctrine has no applicability here. Except for the closing of the road to vehicles during the hunting season for the safety of motorists, the Division of Wildlife at no time claimed any right to control the use of the roadway. Also, as demonstrated above, the Division of Wildlife had no such right. Therefore, there is no conflict between state agencies, and the doctrine is not controlling.

### III.

W & W further contends that no particular twenty-year period was defined by the trial court to justify the decision. However, the record clearly demonstrates that the required use began no later than the summer of 1929 and continued uninterrupted until November 1949, when, according to the record, the Division of Wildlife first temporarily closed the road to vehicular traffic. Thereafter, except for temporary closings, the road continued to be used as before until it was closed in 1980.

Thus, in the summer of 1949 the twenty-year period of use was completed, and at that time, the adverse title right vested. Anything that happened after that date, except abandonment of the right by the adverse owner, could not defeat the title. *See Larson v. Rouse*, 485 P.2d 905 (Colo. App.1971) (not selected for official publication); *Marquez v. Padilla*, 77 N.M. 620, 426 P.2d 593 (1967).

Here, because of the continued use, there was no abandonment.

### IV.

W & W also contends the trial court erred in determining the road was thirty feet wide. We find no error.

The evidence disclosed that although in the 1920's the road was just a trail with two ruts, it gradually was improved, and in the 1940's the county did some work on the road, grading it and installing culverts. Further, specific evidence established that the road was, in fact, thirty feet wide.

Judgment affirmed.

SMITH and BABCOCK, JJ., concur.