The GOODYEAR TIRE & RUBBER
COMPANY, Petitioner

v.

Gary S. HOLMES, Respondent.

No. 07SC263.

Supreme Court of Colorado,
En Banc.

Oct. 6, 2008.

Wells, Anderson & Race, LLC, Mary A. Wells, L. Michael Brooks, Jr., Sarah Smyth O'Brien, Ballard Spahr Andrews & Ingersoll, LLP, Roger P. Thomasch, Denver, Colorado. Garfield & Hecht, David L. Lenyo, Chad J. Schmit, Aspen, Colorado. Attorneys for Petitioner.

Holland & Hart LLP, Stephen G. Masciocchi, David L. Black, Denver, Colorado, Holland & Hart LLP, William W. Maywhort, Colorado Springs, Colorado, Attorneys for Respondent.

Sullan [2], Sandgrund, Smith & Perczak PC, Ronald M. Sandgrund, Leslie A. Tuft, Jennifer A. Seidman, Denver, Colorado, Attorneys for Amicus Curiae Homeowners Against Deficient Dwellings (HADD).

Benson & Associates PC, Jesse Howard Witt, Denver, Colorado, Attorney for Amicus Curiae Colorado Trial Lawyers Association.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

Gary Holmes's vacation home was damaged when a rubber hose that was part of an embedded heating system began to leak in 1993. After the hose continued to leak for several years, despite numerous repairs, Holmes replaced the entire heating system in 2001 and 2002. In a suit against the manufacturer of the hose, The Goodyear Tire & Rubber Company ("Goodyear"), Holmes sought and recovered the costs of replacing the heating system. Holmes also moved for prejudgment interest under section 5–12–102, C.R.S. (2008), as of the date of the installation of the hose in 1991, but the motion was denied. On appeal, the court of appeals held that Holmes could recover prejudgment interest on replacement costs dam-

ages from the installation of the heating system in 1991. *Holmes v. Goodyear Tire & Rubber Co.*, No. 04CA2177, slip op. at 20, 2007 WL 537760 (Colo.App. Feb.22, 2007) (not published pursuant to C.A.R. 35(f) ).

We granted certiorari and we now reverse. We hold that where the plaintiff recovers replacement costs damages, prejudgment interest accrues from the date when he incurred the replacement costs. Replacement costs damages are measured as of the date of replacement, which occurs some time after the plaintiff suffers an injury to his property. Therefore, the damages award accounts for the time value of money between the time of the injury and the time at which damages are measured. Consequently, the plaintiff loses the time value of money only after he incurs the replacement costs. Therefore, the date when the plaintiff incurs the replacement costs is when his money or property is "wrongfully withheld," and prejudgment interest under section 5–12–102(1)(b) accrues from that date.

## II. Facts and Procedural History

In 1991, Holmes had a hydronic radiant heating and snowmelt system installed at his vacation home. The heating system was manufactured and sold by Heatway Radiant Floors and Snowmelting ("Heatway") [1] and it included Entran II rubber hoses, designed and manufactured by Goodyear. The heating system circulated hot fluid through the Entran II hoses embedded under the floors and in walls, thereby heating the home and melting the snow on the sidewalk and driveway.

In the winter of 1993–1994, the heating system in Holmes's home began to leak, and it leaked frequently in the subsequent heating seasons. Holmes had the heating system repaired numerous times, but the leaks continued. In 2001 and 2002, Holmes replaced the heating system in its entirety. Holmes calculated the costs of the replacement at $1.3 million. In addition, he incurred out of pocket expenses related to the replacement.

In the meantime, Holmes filed an action for damages against Heatway and later add-

---

1. Heatway was also known as Chiles Power Supply Company.

ed claims against Goodyear. The trial court granted summary judgment in favor of Goodyear, but the court of appeals reversed the order and remanded for trial. *Holmes v. Goodyear Tire & Rubber Co.*, No. 99CA0843, slip op. at 7 (Colo.App. Nov. 2, 2000) (not published pursuant to C.A.R. 35(f) ).

On remand, Holmes filed an amended complaint asserting, as pertinent here, claims against Goodyear for negligence, strict products liability for design defect, and violation of the Colorado Consumer Protection Act ("CCPA"). Before trial, judgments were entered against Goodyear in several other Entran II cases. Upon Holmes's motion for partial summary judgment, the trial court ruled that Goodyear was collaterally estopped from relitigating the issues of negligence and the defective nature of the Entran II hose. Accordingly, the jury trial in this case proceeded to address the CCPA claim and to determine the issues of causation and damages with respect to the negligence and strict liability claims.

The jury returned a verdict for Goodyear on the negligence and CCPA claims and found for Holmes on the strict liability design defect claim. The jury awarded Holmes $577,295 for "reasonable repair and/or replacement costs" and $55,642 for "other reasonable costs or losses." The jury apportioned twenty percent of the fault to Holmes, twenty percent to Goodyear, and sixty percent to Heatway and another non-party at fault. The trial court then entered a judgment against Goodyear in the amount of $126,587.40, representing Goodyear's share of the replacement costs damages and the damages for other costs and losses.

Holmes subsequently filed a post-trial motion seeking $209,788 in prejudgment interest. In his motion, Holmes argued that the court should award prejudgment interest from the date when the claim first arose and not from the date when Holmes paid to repair or replace the system. Therefore, Holmes requested prejudgment interest from the date of installation of the Entran II hose in his home. The trial court awarded interest from the time of installation of the heating system. However, because the court ruled on the motion after the time limit provided for in C.R.C.P. 59(j), the motion was deemed denied by operation of that Rule.

Holmes appealed, arguing again that prejudgment interest should be awarded from the date of installation of the heating system. The court of appeals held that Holmes was entitled to prejudgment interest and that because the trial court's order purporting to award the interest was void, the case had to be remanded to the trial court to amend the judgment to include prejudgment interest. *Holmes*, No. 04CA2177, slip op. at 16. With respect to replacement costs damages, the court of appeals relied on our decision in *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo.1989), and several court of appeals' cases, and held that "under the particular facts of [the] case, prejudgment interest ... should run from the date the defective hose was installed, because it was the date Holmes was wronged." *Holmes*, No. 04CA2177, slip op. at 20. While the court expressed concern that "the broad construction adopted by [*Mesa* and the other cited] cases is to some extent in tension with the plain language of section 5–12–102(1)(b)," the court concluded it was not at liberty to depart from our interpretation of the statute in *Mesa.*[2] *Id.* at 20–21.

We granted certiorari to review the court of appeals' ruling concerning prejudgment interest on replacement costs.[3]

## III. Analysis

█ Prejudgment interest in actions that do not involve personal injury is governed by

---

**2.** With respect to damages for "other costs and losses," the court of appeals held that prejudgment interest should run from the date these damages or expenses were incurred. *See Holmes v. Goodyear Tire & Rubber Co.*, No. 04CA2177, slip op. at 25, 2007 WL 537760 (Colo.App. Feb.22, 2007) (not published pursuant to C.A.R. 35(f) ). Neither party challenged this holding, and therefore, we do not review it here.

**3.** We granted certiorari on the following issue: Whether the court of appeals erred in allowing a plaintiff in a property-damage product-liability case to recover prejudgment interest on replacement costs from the date of the purchase of the product, which was nearly a decade before the replacement costs were incurred, more than doubling his recovery.

section 5–12–102, C.R.S. (2008). Subsection (1)(b) provides a statutory rate of interest for money or property wrongfully withheld: *"Interest* shall be at the rate of eight percent per annum compounded annually *for all moneys or the value of all property after they are wrongfully withheld* or after they become due to the date of payment or to the date judgment is entered, whichever first occurs." § 5–12–102(1)(b), C.R.S. (2008) (emphasis added). Thus, prejudgment interest accrues upon "wrongful withholding" of money or property. In the case before us, we must determine when "wrongful withholding" occurred.

 Statutory interpretation is a question of law that we review de novo. *Mishkin v. Young,* 107 P.3d 393, 396 (Colo.2005). When the statutory language is unambiguous, we give effect to the plain and ordinary meaning of the statute without resorting to other rules of statutory construction. *Stamp v. Vail Corp.,* 172 P.3d 437, 442–43 (Colo. 2007). Although the term "wrongful withholding" may be difficult to apply in some circumstances, its plain language meaning is clear. "Wrongful withholding" indicates that the aggrieved party lost or was deprived of something to which she was otherwise entitled. Therefore, despite the parties' disagreement on this point, we perceive no ambiguity.

We had opportunity to consider section 5–12–102(1)(b) in *Mesa,* 776 P.2d at 363. Some courts, including the court of appeals below, have subsequently understood *Mesa* to stand for the proposition that the "wrongful withholding" occurs on the date the party is "wronged." [4] However, this reliance is misplaced, as we have never before had opportunity to address the distinction between the "wrong" and the point of "wrongful withholding." In contrast, the issue in *Mesa* was whether the prevailing party in a breach of contract case was entitled to recover prejudgment interest under section 5–12–102(1)(b). [5] *Mesa,* 776 P.2d at 362.

In *Mesa,* an excavation company and a customer entered into a contract whereby the company was required to excavate gravel from a specified site for the customer. *Id.* at 363. The customer later discovered that the company was not excavating the site fully, in violation of the contract. *Id.* The customer prevailed in a breach of contract suit and requested prejudgment interest. *Id.* The court of appeals held that the customer was not entitled to recover prejudgment interest under section 5–12–102(1)(b). *Id.*

Looking at language of section 5–12–102(1)(b), we first considered whether "wrongful withholding" required proof of tortious action. *Id.* at 364. After we concluded that tortious conduct was not necessary, we addressed whether a mere breach of contract was sufficient to demonstrate that a party "wrongfully withheld" money or property. *Id.* at 364–65. We emphasized that section 5–12–102(1)(b) was comprehensive in scope, and we quoted legislative history to illustrate that the statute was not intended to distinguish between parties in breach of contract actions and in other types of cases. *Id.* at 365. Therefore, we held that in a breach of contract action, the prevailing party may recover prejudgment interest. *Id.*

 While the brief quotation from legislative history refers to the time when a party was "wronged," [6] our analysis in *Mesa*

<hr>

4. *See Holmes,* No. 04CA2177, slip op. at 16; *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 776 P.2d 362, 362 (Colo.1989), *see also Loughridge v. Chiles Power Supply Co.,* 431 F.3d 1268, 1288–91, (10th Cir.2005) (questioning the wisdom and fairness of such an interpretation); *Korf v. A.O. Smith Harvestore Products, Inc.,* 917 F.2d 480, 486 (10th Cir.1990); *Porter Constr. Services, Inc. v. Ehrhardt, Keefe, Steiner and Hottman, P.C.,* 131 P.3d 1115, 1118–19 (Colo.App.2005); *Isbill Associates, Inc. v. Denver,* 666 P.2d 1117, 1121–22 (Colo.App.1983).

5. In *Mesa,* we granted certiorari to address (1) "whether the court of appeals erred in conclud-

ing that [the prevailing party] was not entitled to recover prejudgment interest under section 5–12–102(1)(b)" and (2) "whether the damages caused by [the losing party's] failure to excavate the gravel to bedrock constitute[d] money or property 'wrongfully withheld' under section 5–12–102(1)(b) when [the prevailing party] retained a right under the contract to excavate the gravel itself." *Mesa,* 776 P.2d at 363.

6. The quotation from legislative history read:

*All plaintiffs, or defendants who counterclaim, for that matter, are entitled to interest* from the time the action accrued, not from the time the

did not focus on the distinction between "wrongfully withheld" and "wronged." Since we were deciding only whether a party in a breach of contract case is entitled to recover prejudgment interest under section 5–12–102(1)(b), the date of prejudgment interest accrual was not the issue before us. Moreover, the standard measure of damages in a contract case such as *Mesa* is "benefit of the bargain" damages, measured as of the time of the breach.[7] *DSCO, Inc. v. Warren,* 829 P.2d 438, 442 (Colo.App.1991) (citing *General Ins. Co. v. City of Colorado Springs,* 638 P.2d 752, 759 (Colo.1981)). Consequently, in a contract action, the "wrongful withholding" of the plaintiff's money or property occurs at the time of the breach, which is the same time when the plaintiff is "wronged" by the defendant's breach. Therefore, the distinction between "wronged" and "wrongfully withheld" did not affect the analysis in *Mesa* and the reference to the time of the "wrong" was not, even implicitly, part of our holding in that case.[8]

◼ Since *Mesa* did not address the question before us today, we now turn to section 5–12–102(1)(b), exploring the distinction between the statutory term "wrongfully withheld" and the term "wronged" in order to consider the purpose of the statute. When a plaintiff is injured by a defendant, she is wronged by the defendant's action and becomes entitled to damages. *See Seaward Constr. Co. Inc. v. Bradley,* 817 P.2d 971, 975 (Colo.1991). In order to recover damages, the plaintiff's loss or injury is quantified using a measure of damages available to the plaintiff. While the damages would make plaintiff whole at the time when they are measured, the defendant typically does not pay until later, when the damages are award-

ed by the court. *See id.* During the period between the time at which the plaintiff's loss is measured and the judgment, the plaintiff is deprived of the use of the money or property that would constitute the award. *See id.* In other words, the money or property constituting the award is "wrongfully withheld" from the plaintiff. As a result, the plaintiff suffers a loss, frequently termed "time value of money." This lost value is caused by inflation, reducing the value of money over time, and by plaintiff's inability, due to the withholding of his or her money or property, to earn a return on it.[9] Generally, interest rates compensate for the time value of money. While market interest rates are a function of several components,[10] the purpose of prejudgment interest is to reimburse the plaintiff for inflation and lost return. *See Mesa,* 776 P.2d at 364 ("Section 5–12–102 recognizes the time value of money."); *see also Morris v. Goodwin,* 185 P.3d 777, 780 (Colo.2008) (explaining the purpose of prejudgment interest in personal injury actions is to "compensate a plaintiff for the time value of the award eventually obtained against the tortfeasor"); *Farmers Reservoir & Irrigation Co. v. City of Golden,* 113 P.3d 119, 133 (Colo.2005) (explaining section 5–12–102 codified the common law doctrine of moratory interest which was in nature another item of compensatory damages); *Todd v. Bear Valley Vill. Apartments,* 980 P.2d 973, 981 n. 8 (Colo.1999) (noting, in the context of prejudgment interest in personal injury actions, "[t]he General Assembly instituted statutory prejudgment interest as a way of accounting for the time value of money"); *Seaward Constr. Co., Inc.,* 817 P.2d at 975 ("Prejudgment interest on compensatory

---

suit was filed, not from the time judgment was entered, but from the time they were wronged.... The present state of the law encourages the wrongdoer to stall because in some cases they have the money until judgment or settlement.

*Mesa,* 776 P.2d at 365 (emphasis in original).

7. Although we did not discuss the damages awarded to the plaintiff in *Mesa,* the lack of such discussion strongly suggests that the measure of damages did not affect our analysis in *Mesa.*

8. While we also noted, without analysis, the specific date from which prejudgment interest ac-

crued in *Mesa,* that determination was only incidental to whether the plaintiff was entitled to recover prejudgment interest at all.

9. Put differently, "time value of money" means that money will be worth less tomorrow than it is worth today.

10. These components are: time preference, risk of default, risk of future rate changes, expected inflation and administrative costs. Walter J. Wessels, Economics 523–24 (4th ed.2006).

damages ... is necessary to make the plaintiff whole.").

■ The time when the plaintiff is "wronged" may or may not be the same time when the plaintiff's money or property is "wrongfully withheld." The plaintiff is wronged when he suffers an injury caused by the defendant. However, "wrongful withholding" occurs when plaintiff's injury is measured because the damages, if then paid, would make the plaintiff whole. Therefore, the date of the "wrong" is the same as the date of "wrongful withholding" only where the damages are measured as of the date of the injury. If, however, the damages are measured as of a date subsequent to the date of the injury, "wrongful withholding" occurs some time after the plaintiff was "wronged." Because section 5–12–102(1)(b) awards prejudgment interest from the date of "wrongful withholding," the prejudgment interest accrual date depends on the measure of damages insofar as different measures of damages may quantify the plaintiff's injury as of different dates.

■ In cases involving damage to property, including strict products liability cases, the ordinary measure of damages is the diminution of market value of the property. *Board of County Comm'rs v. Slovek,* 723 P.2d 1309, 1314 (Colo.1986). Diminution in value damages are measured by the difference in value of the property before and after the injury to the property occurs. *See, e.g., Zwick v. Simpson,* 193 Colo. 36, 38, 572 P.2d 133, 134 (1977); *Dandrea v. Bd. of County Comm'rs,* 144 Colo. 343, 348, 356 P.2d 893, 896 (1960); *Federal Ins. Co. v. Ferrellgas, Inc.,* 961 P.2d 511, 513 (Colo.App.1997); *see also* 1 Dan B. Dobbs, *Law of Remedies* § 3.2, at 288 (2d ed.1993). In other words, these damages focus on the damaged asset and measure the resulting change in the plaintiff's net worth. Dobbs, § 3.3, at 298. Therefore, this measure of damages "close[s] out the account between the parties on the date ... of the harm [caused by a tort]." *Id.,* at § 3.3, at 301.

■ However, there may be instances where diminution in value damages do not make the plaintiff whole and another measure of damages—cost of repair or replacement—may be more appropriate. *Id.* For example, where the property has no market value, it is impossible to measure any diminution in value. *See id.* Similarly, where repairs have already been made or where plaintiff uses the property for personal purposes that do not maximize the property's economic value [11] and the plaintiff wishes to have the property restored, diminution in value damages would not necessarily make the plaintiff whole. *See id.* In such cases, repair costs may return the plaintiff more effectively to the position he was in before the injury. *See id.; see also* Dobbs, § 5.2, at 715.

■ Repair or replacement costs damages provide the plaintiff with reasonable costs of repairing the damage or the cost of replacement. *See Slovek,* 723 P.2d at 1317; *Dobbs,* § 5.2, at 714. Thus, instead of looking at the damaged property itself, replacement costs damages measure the expense of obtaining repair or a replacement. Dobbs, § 3.3, at 305. As a result, repair or replacement costs are measured at a later date than diminution in value damages. Damages depend on whether the plaintiff requests replacement costs prospectively or retroactively. If prospective, the account between the parties closes out as of the date of the verdict. By contrast, in the case of retroactive damages, a plaintiff is made whole as of the date when the costs were incurred.

■ Because diminution in value damages and replacement costs damages assess the plaintiff's loss differently and tie the determination to a different point in time, the "wrongful withholding" of plaintiff's money or property also occurs at different times. When the plaintiff requests diminution in value damages, his loss is measured as of the time of the injury to the property—the date when the plaintiff was "wronged." If the plaintiff does not receive the damages at that time, he will not be able to earn a return on

---

11. That would be the case, for example, where the property is a private residence and the owner wishes to continue that use. *See Board of County*

*Comm'rs v. Slovek,* 723 P.2d 1309, 1314 (Colo. 1986).

the amount of the damages, and he will also suffer a loss due to inflation between the time the damages are calculated and the time of the judgment. Therefore, "wrongful withholding" occurs when the plaintiff suffers the injury to his or her property. Consequently, in diminution in value cases, the date when the plaintiff was "wronged" is the same as the date when plaintiff's money or property was "wrongfully withheld."

■ In contrast, replacement costs damages measure the plaintiff's loss not at the time when the plaintiff suffered injury to his property, but at a later date when the plaintiff spends money to repair or obtain a replacement. Between the time of the injury and the time of incurring replacement costs, the plaintiff retains the use of the money later used to repair or obtain a replacement and therefore can earn a return on it. In addition, because the plaintiff's loss is measured as of a date later than the date of the injury, the damages take into account inflation between the time of the injury and the time when the damages are measured. In short, the plaintiff does not suffer any time value of money loss until the time when she incurs the replacement costs, and, consequently, "wrongful withholding" of plaintiff's money or property occurs at that time. Thus, in replacement costs cases, "wrongful withholding" of the plaintiff's money or property occurs some time after the plaintiff is wronged.

Importantly, the actual inflation rate and the actual rate of return that the plaintiff could have earned while his money or property was "wrongfully withheld" does not affect awarding prejudgment interest under section 5–12–102(1)(b). Section 5–12–102(1)(b) does not require the plaintiff to prove the amount of actual loss caused by the "wrongful withholding"; instead, it awards prejudgment interest at a statutory rate of 8% per annum. If the actual loss were determinative, the statute would necessarily award the plaintiff the amount of the actual loss rather than interest at the statutory

rate. In effect, section 5–12–102(1)(b) *presumes* the amount of time value of money the plaintiff loses every year when his money or property is withheld. Therefore, the function of prejudgment interest awarded at a statutory rate is to compensate for the time value of money without proof of the actual loss.

■ Having examined the prejudgment interest statute and its application, we now determine when "wrongful withholding" occurred in this case.

As an initial matter, we note that Holmes's case presents somewhat unusual facts because of the extended period of time—eight or ten years—that passed between when Holmes was first injured and when his loss was determined and compensated. Although the Entran II hose was installed in Holmes's home in 1991 and began to leak in 1993, Holmes replaced the heating system in 2001 and 2002. In his lawsuit against Goodyear, Holmes recovered replacement costs damages, which compensated him for the expenses Holmes incurred in 2001 and 2002,[12] over ten years after installation and eight years after the heating system began to leak.

As we have explained, "wrongful withholding" occurs at the time when plaintiff's injury is measured. Prejudgment interest compensates the prevailing party for the time value of money losses caused by inflation and inability to earn a return on the money or property due to plaintiff as a result of the injury. Here, Holmes chose to recover replacement costs damages, and therefore the injury to his property is measured as of the time when he incurred those costs in 2001 and 2002. Therefore, the damages award reflects the 2001 and 2002 value of the reimbursement that made Holmes whole, and Holmes did not suffer any loss due to inflation between the time of installation and 2001 or 2002. Similarly, Holmes did not suffer any loss of return on his original investment—the cost of installation of the heating system in 1991—because it remained invested in his property, and Holmes thus earned a

---

**12.** In oral argument, Holmes asserted that he had requested damages for harm that occurred prior to the replacement of the heating system. However, the record reveals that those costs were requested and recovered as part of the "other costs and losses." As we have noted earlier, *see supra* n. 2, prejudgment interest on "other costs and losses" is not before us.

return on it as the property increased in value.[13] Thus, the replacement costs damages Holmes received took into account the time value of money difference between the time when Holmes's property was damaged and the time when Holmes incurred replacement costs in 2001 and 2002. Accordingly, Holmes did not suffer any loss of money or property for which he could be compensated by prejudgment interest until 2001 and 2002. *See Mesa,* 776 P.2d at 365; *see also* Dobbs § 3.6, at 360 ("Prejudgment interest is awarded to compensate for the delay the plaintiff suffered in receiving his rightful due. If delay has been compensated by other portions of the judgment, prejudgment interest will be improper."). Therefore, "wrongful withholding" of Holmes's money or property occurred in 2001 and 2002 when he·incurred the replacement costs.

Holmes's situation would have been entirely different had he received diminution in value damages. Diminution in value damages would have measured Holmes's loss at the time when he suffered injury to his property, which in this case may have occurred as early as in 1991 when the defective hose was installed.[14] Because there is no delay between the time of the injury and the time at which the loss resulting from the injury is measured, Holmes would not have lost any time value of money up to that point. However, Holmes would have suffered a time value of money loss after the date of the injury. Because the damages award would have been measured in 1991 dollars but awarded to Holmes more than a decade later, Holmes would have suffered a loss caused by inflation between·1991 and the date of the judgment as well as a loss due to the fact that he could not invest the award and earn a return on it. Therefore, had Holmes requested diminution of value damages, the "wrongful withholding" would have occurred at the time he suffered injury to his proper-

ty, and the prejudgment interest under section 5–12–102(1)(b) would have accrued from that time.

In the case before us, however, Holmes received replacement costs damages which measured his compensation not as of the time of the injury to his property, but rather as of the time when Holmes incurred the replacement costs in 2001 and 2002. Thus, the replacement costs damages accounted for the time value of money up until that time. Therefore, we hold that "wrongful withholding" occurred when Holmes incurred the replacement costs, and prejudgment interest under section 5–12–102(1)(b) accrues from that date.

Holmes argues that the replacement costs damages did not compensate him for the time value of money up to 2001 and 2002 because there is no evidence that costs of replacement increased between the time Holmes was injured and the time when he actually replaced the heating system. As we have discussed earlier, section 5–12–102(1)(b) does not require that the plaintiff prove the amount of·actual loss caused by the "wrongful withholding." Instead, the statute *presumes* the amount of the plaintiff's loss and compensates for it at the statutory rate. Thus, whether the actual time value of money loss was higher or lower than the statutory rate is irrelevant for the award of prejudgment interest under section 5–12–102(1)(b). In a situation where, as here, "wrongful withholding" of the plaintiff's money or property occurs some time after the injury, and the time value of money up to the time of the "wrongful withholding" is accounted for as part of damages, the damages award becomes a functional substitute of prejudgment interest. Consequently, just as the actual time value of money loss is irrelevant for prejudgment interest under section 5–12–102(1)(b), it is also irrelevant where the damages award compensates the plaintiff for the

---

13. While it is, of course, possible that the value of Holmes's home remained the same or even decreased as a result of the leaking Entran II hose or for other reasons, Holmes chose not to have his losses measured based on diminution in value. Therefore, the possible fluctuation of the value of the house is irrelevant for the time value of money analysis of replacement costs.

14. Holmes argues that he was injured by the installation of the defective hose, which occurred in 1991. For the purposes of our analysis here, we need not and do not decide when the injury to Holmes's property occurred; we merely assume, without deciding, that Holmes may have suffered injury as early as in 1991 when the defective hose was installed in his home.

time value of money, and the plaintiff therefore does not receive prejudgment interest separately.

In sum, we seek to clarify the distinction between the date a plaintiff is "wronged" and the time at which a "wrongful withholding" occurs, for purposes of section 5–12–102(1)(b). Although some courts have interpreted our opinion in *Mesa* as addressing this issue, it is, in fact, a matter of first impression for this court. As such, to the extent the court of appeals has cited *Mesa* to support a conclusion that prejudgment interest accrues from the time the prevailing party was "wronged" *as opposed to* the time when money or property was "wrongfully withheld," we expressly disapprove of those decisions. The "wrong" and the "wrongful withholding" are separate concepts that may or may not occur at the same moment in time. When a plaintiff chooses to seek damages in the form of replacement costs incurred at some point subsequent to the wrong, the wrongful withholding occurs when the plaintiff undertakes the replacement expenditure and thus prejudgment interest begins to accrue on that date.

## IV. Conclusion

Accordingly, we reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.