BEAVER CREEK RANCH, L.P., an Iowa limited partnership, d/b/a in Colorado as Youberg Beaver Creek Ranch, L.P., Plaintiff–Appellee,

v.

GORDMAN LEVERICH LIMITED LIABILITY LIMITED PARTNERSHIP, a Colorado limited liability limited partnership, Defendant–Appellant.

No. 08CA1333.

Colorado Court of Appeals, Div. V.

May 28, 2009.

Rehearing Denied July 23, 2009.

Traylor, Tompkins & Black, P.C., Peter R. Black, Lance Phillip Timbreza, Grand Junction, Colorado, for Plaintiff–Appellee.

John H. Case, Aspen, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

In this action to quiet title to ranch property, defendant, Gordman Leverich L.L.L.P., appeals from the judgment of the trial court in favor of plaintiff, Beaver Creek Ranch, L.P. We affirm in part, reverse in part, and remand.

## I. Background

Gordman Leverich owns ranch lands in rural Garfield County known as the Rinehart Ranch. Gordman Leverich purchased the Rinehart Ranch in 1998 from Lee Rinehart. Rinehart's family acquired the ranch in three separate transactions in 1949, 1954, and 1957. One or more members of the Rinehart family owned the ranch from 1949 until the 1998 sale. The Rinehart Ranch has historically been seasonally leased for grazing.

Beaver Creek Ranch owns ranch lands north of and adjacent to the Rinehart Ranch, known as the Youberg Ranch. David Youberg purchased the Youberg Ranch in 1971.

Since that time, the Youberg Ranch has been owned by several different entities controlled by Youberg. Youberg is the principal owner of Beaver Creek Ranch. Like the Rinehart Ranch, the Youberg Ranch has historically been seasonally leased for grazing.

The two ranches are divided by a barbed wire fence. The fence was originally erected sometime in the early 1900s and has existed continuously in some form since that time. The fence does not follow the boundary between the two ranches as described in the parties' deeds.

This case concerns two parcels of real property totaling approximately 167.31 acres (disputed property), which lie north of the barbed wire fence but south of the legal boundary described in the deeds. The disputed property is mountainous land that is fenced into the Youberg Ranch. However, the disputed property is not legally described as being part of the Youberg Ranch in Youberg's deed; rather, the disputed property is legally described as being part of the Rinehart Ranch in Gordman Leverich's deed. A nearby sketch shows the approximate placement of the current boundary line as shown in the deeds and the placement of the barbed wire fence.[1]

---

1. This sketch is based upon Gordman Leverich's exhibit 55, which is a 2003 survey, and is provided only to orient the reader. The sketch is not drawn to scale.

Key:
☐ = Disputed Property

—·—·—·— = Barbed Wire Fence

·············· = Legal Description of Rinehart Boundary

Ⓦ = EnCana Well Site

The large disparity between the legal description contained in the current deeds and the barbed wire fence line has its genesis in a survey performed long after the fence line was established. In 1949, the Bureau of Land Management commissioned a "dependent resurvey" of the area that includes the Rinehart Ranch and the Youberg Ranch to correct errors attributable to the original survey performed in the late nineteenth century. One of the purported effects of this resurvey was to shift the boundary line between the Youberg Ranch and the Rinehart Ranch. The fence was never moved to reflect the dependent resurvey.

The discrepancy between the fence location and the legal boundary concerned Helen Rinehart, Lee Rinehart's mother and predecessor in interest, as early as 1978. In a series of letters to Youberg between 1978 and 1984, Mrs. Rinehart repeatedly asserted that the fence line was not on the legal boundary. Mrs. Rinehart suggested in this correspondence that the fence should be moved to comport with the legal boundary. She also threatened to take legal action in several of her letters if an agreement to relocate the fence could not be reached.

Youberg first responded to Mrs. Rinehart by letter in October 1981, stating, "I don't want any of your land." However, on October 18, 1984, Youberg asserted in a letter that "the squatter's principle" might apply to any land to which Mrs. Rinehart held legal title that was fenced into the Youberg Ranch. In several subsequent letters responding to Youberg, Mrs. Rinehart stated that she

would pay for a survey and the relocation of the fence.

In a letter dated August 1985, Lee Rinehart proposed to Youberg that they share the cost of rebuilding the fence along the legal boundary. Youberg responded in a letter dated August 26, 1985 that he was "thinking favorably about the question." There is no correspondence between the parties after this date in the record. The fence was not moved.

The fence was undisturbed until August 2002 when Gordman Leverich entered into a lease agreement with EnCana Corporation to allow EnCana to extract oil and gas from the disputed property. During construction of an oil and gas well, EnCana construction crews destroyed part of the fence. The EnCana well is located on property to which Gordman Leverich held legal title, but is entirely on the Youberg Ranch side of the fence.

Upon discovering the construction of the EnCana well and the destruction of a portion of the fence, Beaver Creek Ranch commenced this action on December 7, 2004 to quiet title to the disputed property, including the EnCana well site. Beaver Creek Ranch asserted claims for statutory acquiescence and adverse possession, as well as a damages claim for all payments to Gordman Leverich pursuant to the lease agreement with EnCana.

On December 21, 2007, following a bench trial, the trial court entered judgment in favor of Beaver Creek Ranch. The trial court determined that Beaver Creek Ranch had acquired title to the disputed property by adverse possession. The trial court found that Beaver Creek Ranch's adverse possession began with the completion of the BLM resurvey in 1949, or alternatively with Youberg's assertion of "the squatter's principle"

in his 1984 letter to Helen Rinehart. The parties mutually requested that the trial court retain jurisdiction to resolve the damages issue.

On June 17, 2008, the trial court awarded damages to Beaver Creek Ranch in the amount of $216,858.77, comprising all royalty payments by EnCana to Gordman Leverich for oil and gas extraction from the disputed property, a signing bonus paid to Gordman Leverich, and a payment for "surface damage" caused by the construction of the EnCana well. The trial court also awarded Beaver Creek Ranch prejudgment interest at the rate of eight percent per annum as set forth in section 5–12–102, C.R.S.2008, computed from the date of the filing of the complaint, December 7, 2004, until the date of the entry of judgment.

Gordman Leverich now appeals the trial court's judgment quieting title in Beaver Creek Ranch and the award of prejudgment interest. Gordman Leverich does not appeal the amount of damages, aside from its contention that Beaver Creek Ranch is not entitled to any damages if the trial court erred in finding that Beaver Creek Ranch acquired title by adverse possession.

## II. Adverse Possession

We first conclude the trial court properly quieted title in Beaver Creek Ranch based on adverse possession.

■ To obtain title by adverse possession, a party must establish that his possession was hostile, actual, exclusive, adverse, under a claim of right, and uninterrupted for the statutory period. *Welsch v. Smith*, 113 P.3d 1284, 1287 (Colo.App.2005) (citing *Smith v. Hayden*, 772 P.2d 47 (Colo.1989) (*Hayden*)). The statutory period in Colorado is eighteen years. § 38–41–101(1), C.R.S.2008. For actions filed before July 1, 2008,[2] such as

2. Perceiving that there were insufficient "obstacles" to establishing a claim for adverse possession under the existing law, the General Assembly amended the adverse possession statute in 2008. Hearings on H.B. 1148 before the S. Judiciary Coram., 66th Gen. Assemb., 2d Sess. (Mar. 12, 2008). The amendments require, inter alia, that an adverse claimant prove each element of adverse possession by clear and convincing evidence and establish a good faith belief that

the person adversely possessing (or his or her predecessor) was the true owner of the property. § 38–41–101(3)–(4), C.R.S.2008. The 2008 amendments also give trial courts discretion to award damages to the party losing title. § 38–41–101(5), C.R.S.2008. However, the amendments apply only to those adverse possession cases filed on or after July 1, 2008. Ch. 190, sec. 2, 2008 Colo. Sess. Laws 670. The good faith requirement applies to all claims where title by adverse

this one, the claimant must prove adverse possession by a preponderance of the evidence. *Schuler v. Oldervik,* 143 P.3d 1197, 1202 (Colo.App.2006). "Every reasonable presumption is made in favor of the true owner as against adverse possession." *Id.* (quoting *Lovejoy v. Sch. Dist. No. 46,* 129 Colo. 306, 311–12, 269 P.2d 1067, 1070 (1954)).

■ A determination of whether possession is hostile, actual, exclusive, and adverse is a question of fact to be determined by the trier of fact. *Hayden,* 772 P.2d at 52–53.

■ We accept the trial court's findings of fact unless they are so clearly erroneous as to have no support in the record, because the trial court is in the best position to determine the credibility of the witnesses and the weight to be afforded the evidence before the court. *Id.* at 56; *see also Schuler,* 143 P.3d at 1202.

■ "[H]ostile intent is based on the intention of the adverse possessor to claim exclusive ownership of the property occupied." *Hayden,* 772 P.2d at 56. The adverse possessor need not make a showing of force or actual dispute for his possession of the property to be hostile. *Schuler,* 143 P.3d at 1202–03. The possession must be hostile against both the true owner and the world from its inception. *Id.* The trier of fact determines whether possession is hostile through reasonable deductions from the acts and declarations of the parties. *Hayden,* 772 P.2d at 56.

■ Although the mere existence of a fence does not establish adverse possession, when both property owners believe that a fence has marked the true boundary of the property for eighteen years, there is a presumption that the holding is adverse. *Bd. of County Comm'rs v. Ritchey,* 888 P.2d 298, 304 (Colo.App.1994). When the boundaries of the land claimed by adverse possession are not established by fences or other barriers, or one or more parties do not believe that the fence marks the true boundary of the property, the adverse possessor may claim only the

land actually occupied for the statutory period. *Hayden,* 772 P.2d at 52. To actually possess the land, the adverse possessor must act as the ordinary land owner would in utilizing the land for the ordinary use of which it is capable. *Id.* Possession of the surface estate constitutes possession of the mineral estate if the mineral estate has not been severed from the surface estate. *See Kriss v. Mineral Rights, Inc.,* 911 P.2d 711, 714 (Colo.App.1996).

■ The exclusivity requirement of adverse possession requires that the adverse possessor effectively exclude the true owner, and the possession must not be joint. *Hayden,* 772 P.2d at 53 (joint possession by the claimant and the owner precludes fulfillment of the exclusivity requirement).

■ Finally, once a claimant demonstrates that he has been in actual and exclusive possession of the property for the statutory period, a rebuttable presumption arises that his possession was adverse; however, the use must be sufficiently open and obvious to apprise a true owner who exercises reasonable diligence that the claimant intends to claim adversely. *Schuler,* 143 P.3d at 1197.

Gordman Leverich advances three main contentions regarding Beaver Creek Ranch's claim of adverse possession. First, it contends that the trial court erred by finding that Beaver Creek Ranch's adverse possession began upon completion of the resurvey in 1949. Second, Gordman Leverich contends that Youberg's 1981 statement to Helen Rinehart that "I don't want any of your land" extinguished Youberg's intention to claim adversely, and thus precluded a finding of adverse possession. Finally, Gordman Leverich maintains that even if Youberg's 1984 assertion of the "squatter's principle" re-established Youberg's intent to claim adversely, such adverse possession was interrupted less than eighteen years later by the construction of the EnCana well pursuant to the agreement between EnCana and Gordman Leverich.

possession vests on or after July 1, 2008. *Id.* This case was filed December 7, 2004, and title by adverse possession vested long before July 1, 2008. The 2008 amendments thus do not apply to this case, and we are required to apply the law as it existed at the time this action was filed.

We begin by noting that we agree with Gordman Leverich's final contention that the trial court erred in concluding that Beaver Creek Ranch established title by adverse possession if the statute of limitations did not begin running until Youberg's October 18, 1984 assertion of the "squatter's principle." There is no record support for the trial court's finding that Beaver Creek Ranch's possession was uninterrupted or exclusive for eighteen years following Youberg's October 1984 letter. The record is clear that the EnCana well was constructed in August 2002, less than eighteen years after Youberg's letter asserting the "squatter's principle." The construction of the EnCana well pursuant to the lease agreement with Gordman Leverich and the destruction of a portion of the fence interrupted Beaver Creek Ranch's possession of the disputed property. At minimum, the construction of the EnCana well resulted in joint possession of the disputed property by Gordman Leverich and Beaver Creek Ranch, thus precluding a finding of adverse possession. *See Hayden*, 772 P.2d at 53.

However, because this finding was made in the alternative, it did not impact the trial court's determination that Beaver Creek Ranch's adverse possession commenced with the 1949 resurvey. Consequently, the trial court found that Beaver Creek Ranch acquired title by adverse possession before the letters exchanged between the Rineharts and Youberg in the late 1970s and early 1980s. Because we conclude that there is support in the record for the trial court's finding, we reject Gordman Leverich's remaining contentions with respect to adverse possession.

Gordman Leverich argues that adverse possession could not have commenced in 1949 because there was no public notice of the 1949 BLM resurvey and neither Gordman Leverich, Beaver Creek Ranch, nor their predecessors were aware of the effects of the resurvey. Gordman Leverich contends that Beaver Creek Ranch's use of the land was thus not sufficiently "open and obvious" to apprise Gordman Leverich, the true owner,

of an intention to claim adversely. *See Palmer Ranch, Ltd. v. Suwansawasdi*, 920 P.2d 870 (Colo.App.1996). We are not persuaded.

Contrary to Gordman Leverich's argument, the trial court did not find that the 1949 resurvey put the Rinehart family and their predecessors on notice of a potential adverse claim. Indeed, the trial court noted the well-established principle that a government resurvey cannot impair the rights of private landowners acquired under the original survey. 43 U.S.C. § 772; *see also Everett v. Lantz*, 126 Colo. 504, 513, 252 P.2d 103, 107–08 (1952). In this case, Beaver Creek Ranch's rights were impaired by the resurvey, because the resurvey purported to realign the boundaries such that Beaver Creek Ranch's predecessor lost title to land within the fence line. The trial court determined that "[Beaver Creek Ranch's] continued occupancy of the land, continued use of the land, and ongoing preservation of the original fence line was an open and notorious defiance of the purported effect of the resurvey." The trial court found that Beaver Creek Ranch and its predecessors maintained actual, adverse, hostile, and exclusive possession of the disputed property "for the uninterrupted period [beginning in] 1949." This determination is amply supported by the trial court's comprehensive and detailed findings of fact.[3]

Numerous witnesses testified that they believed the fence line had historically marked the true boundary between the Youberg Ranch and the Rinehart Ranch. One rancher, who had lived in the vicinity of the ranches for his entire life, was a grazing lessee on both ranches at different times. He testified that he had been familiar with the fence since 1952 and had always understood the fence to be the boundary between the ranches. A second grazing lessee, who also leased both ranches at different periods in the late 1960s and early 1970s, testified that he understood the fence to be the boundary and maintained it as such. Another witness, the son of a Youberg predecessor,

3. Gordman Leverich did not designate a transcript of the trial testimony as part of the appellate record. Accordingly, we must presume that the evidence supports the trial court's findings. *See Schuster v. Zwicker*, 659 P.2d 687, 690 (Colo. 1983).

lived on the Youberg Ranch between 1947 and 1954. His testimony indicated that he and his father, as well as the Rinehart predecessor who owned the Rinehart Ranch at the time, all regarded the fence as the true boundary. He also testified that he worked on the fence while he lived on the Youberg Ranch. Finally, Youberg himself indicated that when he purchased his ranch in 1971, he believed the fence line to be the true boundary between the ranches. He further testified that responsibility for maintaining the fence was shared between the owners of the two ranches.

The trial court's findings also reflect that evidence was adduced at trial indicating that Gordman Leverich and its predecessors were aware of a potential adverse claim. Gordman Leverich's purchase contract disclaimed any warranty that the fence lines were correctly placed on the legal boundary line. More significant, it is undisputed that the Rinehart family was aware that the fence was encroaching onto their land. Mrs. Rinehart's correspondence with Youberg repeatedly asserted that the fence was not on the legal boundary. Mrs. Rinehart also repeatedly threatened legal action to resolve the dispute, but never brought suit against Youberg. There is also evidence in the record that Mrs. Rinehart knew that the fence encroached on her land when she first purchased her property in 1954. In a 1981 letter to Youberg, Mrs. Rinehart stated, "I know you have quite a few acres fenced in.... But that wasn't your fault. That was the way it was fenced when we bought it from Claude Corley [in 1954]." In a 1984 letter to Youberg, Mrs. Rinehart noted that she spoke to an attorney "about [the fence] when [she] bought the land from Corley."

This evidence supports the trial court's finding that Beaver Creek Ranch's adverse possession commenced in 1949. The continued presence and maintenance of the fence, as well as the use of the property for seasonal grazing, were sufficiently open and obvious uses to apprise Gordman Leverich's predecessors of the possibility of an adverse claim. *See Palmer Ranch,* 920 P.2d at 873 (holding that seasonal grazing of livestock plus erection of fence caused statutory period to run

for purposes of adverse possession); *see also First Nat'l Bank v. Fitzpatrick,* 624 P.2d 927, 928 (Colo.App.1981) (same).

We next consider and reject Gordman Leverich's contention that Youberg's 1981 statement to Helen Rinehart that "I don't want any of your land" extinguished Youberg's intention to claim adversely, and thus precluded a finding of adverse possession. First, Beaver Creek Ranch's rights to the property as against the record owner had vested by adverse possession before 1981. Any act, other than abandonment, which is inconsistent with ownership and occurs after title by adverse possession is vested, does not defeat that title. *Welsch,* 113 P.3d at 1288 (citing *Bd. of County Comm'rs v. White & Welch Co.,* 754 P.2d 770 (Colo.App.1988)). Youberg's statement therefore had no operative effect because his title had vested by adverse possession prior to 1981. The record here contains no evidence which would support Youberg's abandonment of title, such as ceasing to lease the land for seasonal grazing or relocating the fence to the deeded boundary.

Second, the trial court found that Youberg was referring only to land that was not fenced into his ranch when he made the statement. Specifically, the trial court noted in its order that "Youberg indicated his intent with this comment was to confirm he did not want land *south of the fenceline*" (emphasis added). In other words, Youberg testified that his statement did not relate to the disputed property. We thus conclude that the trial court correctly found that this statement had no effect on the adverse possession claim.

We must presume that the trial court's finding that Beaver Creek Ranch obtained title to the disputed property by adverse possession is fully supported by the record. Therefore, we conclude that the trial court's judgment in favor of Beaver Creek Ranch on its adverse possession claim was not erroneous.

### III. Prejudgment Interest

Gordman Leverich next contends that the trial court erred in awarding prejudgment interest to Beaver Creek Ranch. We agree.

Prejudgment interest in actions that do not involve personal injury is governed by section 5–12–102, C.R.S.2008. Subsection (1)(b) provides a statutory rate of interest for money or property wrongfully withheld: "Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs." § 5–12–102(1)(b), C.R.S.2008. Our supreme court recently clarified that the plain meaning of the term "wrongful withholding" is "that the aggrieved party lost or was deprived of something to which she was otherwise entitled." *Goodyear Tire & Rubber Co. v. Holmes,* 193 P.3d 821, 825 (Colo.2008) (*Holmes*). In *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 776 P.2d 362, 365 (Colo.1989), the supreme court, relying on the legislative history of section 5–12–102, applied a "liberal construction" to allow a nonbreaching party in a breach of contract action to recover prejudgment interest from the time of the breach. The *Mesa Sand & Gravel* court also held that "wrongful withholding" does not require proof of tortious conduct. *Id.* at 364.

However, the court in *Holmes* held that *Mesa Sand & Gravel* does *not* stand for the proposition that " 'wrongful withholding' occurs on the date the party is "wronged." " *Holmes,* 193 P.3d at 825. The court then distinguished between the concepts of "wrong" and "wrongful withholding." *Id.* The plaintiff is "wronged when he suffers an injury caused by the defendant." *Id.* at 827. In contrast, wrongful withholding occurs when the plaintiff's injury is measured because the damages, if then paid, would make the plaintiff whole. *Id.* The court observed that in a contract action, where the standard measure of damages is the benefit of the bargain, the wrongful withholding of the plaintiff's money or property occurs at the time of the breach, which is also the time when the plaintiff is wronged by the defendant's breach. *Id.* at 826.

■ The court recognized that different measures of damages may apply, depending on the nature of a plaintiff's loss. Consequently, in some cases, the date of wrongful conduct may be different from the date of the wrongful withholding. *Id.* at 827. For instance, *Holmes* involved a suit against a manufacturer of a defective hose embedded in a residential heating system. *Id.* at 823. The homeowner asserted claims for negligence, strict products liability for design defect, and violation of the Colorado Consumer Protection Act. *Id.* at 824. A jury awarded the homeowner his reasonable repair and replacement costs for the home heating system. *Id.* In its analysis of the prejudgment interest issue, the court concluded that replacement costs damages measure the "plaintiff's loss not at the time when the plaintiff suffered injury to his property, but at a later date when the plaintiff spends money to repair or obtain a replacement." *Id.* at 828. The homeowner in *Holmes* replaced the heating system approximately eight to ten years after its original installation. *Id.* Accordingly, the court held that while the homeowner was wronged at the time of installation of the defective hose, he was only entitled to prejudgment interest from the time when he incurred replacement and repair costs. *Id.* at 829. Wrongful withholding only occurred at the time when the homeowner's injury was measured—when he replaced the heating system and became entitled to reimbursement for the replacement cost. *Id.* at 828. The relevant inquiry is thus not when the plaintiff was wronged, but rather when the plaintiff was entitled to the property or money.

■ While *Holmes* involved underlying causes of action different from those at issue here, we nonetheless conclude that the holding is applicable to this case. Beaver Creek Ranch argues that wrongful withholding should be measured from July 2000, when its attorneys began corresponding with Gordman Leverich and asserted ownership claims to the disputed property. Alternatively, Beaver Creek Ranch argues that the filing of its complaint put Gordman Leverich "on notice" that it was wrongfully withholding the money derived from the oil and gas lease on the disputed property. We reject these arguments because the record indicates that Gordman Leverich believed that it owned the disputed property at all times until the judg-

ment was entered. In contrast, Beaver Creek Ranch believed it had a *claim* to the disputed property and sought to quiet title. The disputed property was described in Gordman Leverich's deed and Gordman Leverich was the owner of record until the judgment quieting title was entered against it. Beaver Creek's damages could not be measured until ownership of the disputed property was determined. Thus, Beaver Creek Ranch only became entitled to the royalties *after* it obtained a judgment from the court quieting title to the disputed property.

Accordingly, we conclude that the trial court erred in awarding Beaver Creek Ranch prejudgment interest.

## IV. Conclusion

The trial court's judgment is affirmed with respect to adverse possession. The trial court's judgment is reversed as to the award of prejudgment interest to Beaver Creek Ranch. Because the amount of damages was not appealed, our decision has no effect on that portion of the trial court's judgment. The case is remanded for further proceedings consistent with this opinion.

Judge BERNARD and Judge BOORAS concur.