The **PERSONNEL DEPARTMENT, INC.**, Plaintiff–Counter–Defendant–Appellee and Cross–Appellant,

v.

**PROFESSIONAL STAFF LEASING CORPORATION**, Counter–Claimant–Defendant–Appellant and Cross–Appellee,

and

**Bala Ramamoorthy**, Counter–Defendant–Appellant and Cross–Appellee.

Nos. 05–1552, 06–1041.

United States Court of Appeals, Tenth Circuit.

Oct. 27, 2008.

Order Recalling Mandate and Amending Bill of Costs Dec. 10, 2008.

Bruce A. Featherstone, Jayme Noa Moss, Featherstone Petrie Desisto LLP, Teresa D. Locke, Holland & Hart, Joseph W. Halpern, Denver, CO, for The Personnel Department, Inc.

Lorane F. Hebert, Hogan & Hartson, LLP, Tamir Damari, Stanley H. Goldschmidt, P.C., Washington, DC, Robert Campbell Troyer, Ty Cobb, Hogan & Hartson, Denver, CO, for Bala Ramamoorthy.

Before O'BRIEN, BALDOCK, and HOLMES, Circuit Judges.

### ORDER AND JUDGMENT*

JEROME A. HOLMES, Circuit Judge.

Counter–Claimants–Appellants and Cross–Appellees Professional Staff Leasing Corporation and Bala Ramamoorthy (collectively "ProLease") appeal from a final judgment entered on a jury verdict in favor of Plaintiff–Counter–Defendant–Appellee and Cross–Appellant The Personnel Department, Inc. ("PDI") on its claim of tortious interference with prospective busi-

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, *res judicata,* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

ness relations. PDI cross-appeals from the district court's denial of its request for prejudgment interest. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

## BACKGROUND

ProLease, a Maryland corporation, and PDI, a corporation organized under the laws of Indiana with its principal place of business in Colorado, are professional employer organizations that provide employee-related services for outside businesses. In January 1999, the parties began negotiating for ProLease's purchase of PDI. Both PDI's principal, Barry Farah, and ProLease's principal, Bala Ramamoorthy, executed a Letter of Intent ("LOI") by which ProLease agreed to purchase PDI's assets. ProLease insisted on a provision that stated "[s]hould the parties not agree upon the terms of a formal purchase contract, this letter shall be null and void and the Deposit shall be returned to the Purchaser." Aplt.App. at 766; Aplee. Supp. App. at 567. PDI proposed that ProLease deposit earnest money because, in agreeing to negotiate with ProLease, it was forced to forego other opportunities for a sale. Correspondingly, PDI agreed not to entertain other offers or enter other contracts pending efforts to reach a final contract with ProLease. Finally, the LOI provided "[b]oth parties will engage in a 'best efforts' attempt to finalize the document by February 1, 1999." Aplt.App. at 769.

When the parties executed the LOI, several terms remained unresolved. For example, prior to the LOI's execution, Mr. Farah indicated to Mr. Ramamoorthy that he was concerned that ProLease provide sufficient security or collateral for the $2.5 million promissory note that would fund a portion of the purchase price. However, the LOI did not address the issue. Additionally, during negotiations for the anticipated purchase contract, the parties agreed to a lower purchase price. The LOI did not preclude the parties from adding or renegotiating terms.

On February 1, 1999, PDI informed ProLease that it considered a January 28 ProLease draft agreement deficient. Although the LOI expressly provided that ProLease could only conduct its due diligence after the execution of a formal purchase contract, PDI nonetheless agreed to allow ProLease to conduct its due diligence on February 2, 1999. PDI encouraged ProLease to produce a revised draft contract during its due diligence visit so that the parties could enter a formal purchase agreement by February 5, 1999.

On February 8, 1999, ProLease sent a second draft proposed purchase agreement, which did not address the collateral/security issue. In a letter dated February 11, 1999, ProLease threatened to "commence appropriate legal action" if PDI did not execute the proposed purchase contract. Aplt.App. at 825. PDI's counsel subsequently communicated his belief that the facts did not support a legal cause of action and noted that threatening legal action was not conducive to continued negotiations. On February 13, 1999, Mr. Farah informed Mr. Ramamoorthy how important the collateral/security issue was to him and noted that threats of future legal action eroded his confidence in the process. Although Mr. Ramamoorthy later refused to characterize his statement as a threat, he conceded that he told Mr. Farah that he would seek relief in court if the parties could not reach an agreement.

On February 18, 1999, when yet another revised draft did not address the collateral/security issue to PDI's satisfaction, Mr. Farah opted to end negotiations. In early March 1999, Mr. Farah told Mr. Ramamoorthy that PDI was still for sale for cash. Mr. Ramamoorthy apparently responded that, rather than pay cash, he

could keep Mr. Farah from selling his business.

As a result of the failed negotiations, ProLease sued PDI for breach of contract in the United States District Court for the District of Maryland. Mr. Ramamoorthy authorized the filing of the complaint, but acknowledged that he did not know or attempt to discover Maryland law prior to filing. On April 13, 1999, ProLease sent a letter "caution[ing] Mr. Farah against making any attempts to sell the business while this litigation is ongoing. . . ." Aplee. Supp.App. at 1317. Mr. Ramamoorthy admitted he knew that others were interested in purchasing PDI and that any due diligence search would reveal the pending litigation.

In April 1999, PDI entered into negotiations with Global Employment Solutions, Inc. ("Global"). It had fully disclosed the pending ProLease litigation to Global. However, by letter dated August 16, 1999, Global stated that it was unable to continue negotiations "in the face of the pending litigation filed by Professional Staff Leasing Corporation." Aplee. Supp.App. at 1501. Global further stated, however, that "[s]hould this litigation be resolved in a favorable manner to TPD [i.e., PDI] in the near future, Global is extremely interested in renewing negotiations with TPD. . . . Kindly keep us informed as to the status of this litigation . . . . we would welcome the opportunity to explore renewing negotiations." Id. Two days later PDI informed ProLease that its lawsuit was interfering with PDI's ability to sell to a willing buyer on August 27, 1999. It warned that, unless ProLease dismissed its case by August 24, 1999, PDI would file a counterclaim for interference.

ProLease did not dismiss its case and, as promised, PDI filed its counterclaim. PDI then moved for summary judgment on ProLease's breach of contract claim. While PDI's motion was pending, PDI entered into negotiations with Church Extension of the Church of God ("Church Extension") which culminated in the February 28, 2000 sale of PDI's Indiana operations. PDI claimed it was forced to sell its Indiana operations for less favorable terms than those offered by Global. Additionally, after paying approximately $850,000, Church Extension defaulted. Testimony at trial established that the value of the lost Global sale was at least $2,578,000.

The Maryland district court granted PDI's motion for summary judgment on ProLease's breach of contract action on February 14, 2000, and transferred the case—with only the counterclaim for tortious interference pending—to the United States District Court for the District of Colorado. ProLease subsequently sought reconsideration of the Maryland district court's order granting PDI summary judgment on the breach of contract claim. The Colorado district court declined to revisit the issue.

On August 23, 2005, after a seven day trial, the jury returned a verdict in PDI's favor. ProLease timely filed a motion for judgment as a matter of law, contending that the evidence was insufficient to support the jury's verdict that it intentionally interfered with PDI's prospective business relations and that the evidence unequivocally demonstrated that its interference was privileged. The district court denied the motion.

ProLease also filed a motion for a new trial or remittitur, claiming that the jury's verdict was against the clear weight of the evidence and that the court had committed procedural violations entitling it to a new trial. The district court similarly rejected ProLease's new trial motion. ProLease timely filed its notice of appeal.

On August 26, 2005, PDI moved to amend the judgment to include prejudgment interest. By a January 23, 2006

order, the district court refused to alter the judgment to include prejudgment interest. PDI timely filed a notice of appeal from this decision.

## DISCUSSION

### I. ProLease's Appeal

#### A. Denial of Motion for Judgment as a Matter of Law

ProLease claims that the district court erred in denying its motion for judgment as a matter of law. We review a district court's disposition of a motion for judgment as a matter of law de novo, applying the same standard as the district court. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1185 (10th Cir.2007). A judgment as a matter of law is warranted "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Id.* (citing *Vining v. Enter. Fin. Group, Inc.*, 148 F.3d 1206, 1213 (10th Cir.1998)); *see Kelley v. City of Albuquerque*, 542 F.3d 802, 807–08 (10th Cir.2008). "[T]he controlling question is whether the plaintiff has arguably proven a legally sufficient claim." *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir.2001). We view the evidence most favorably to the non-moving party. *See Harsco Corp.*, 475 F.3d at 1185–86.

ProLease first argues that Colorado law required PDI to establish that ProLease had knowledge of the particular relationship with which it allegedly interfered, and since there is no evidence that ProLease had this knowledge, the verdict and judgment cannot stand. We disagree.

#### 1. Tortious Interference

Colorado has adopted the RESTATEMENT (SECOND) OF TORTS § 766B (1979) formulation of the intentional interference tort.[1] *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo.1995). No Colorado court has reduced a section 766B claim to a list of required elements. Instead, the courts have merely stated that "[t]ortious interference with a prospective business relation requires a showing of intentional and improper interference preventing formation of a contract." *Id.* (citing *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo.Ct.App.1981)). "[A] continuing business or customary relationship, which includes a prospective quasi-contract, suffices to create rights against intentional interference." *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns*, 311 F.Supp.2d 1048, 1117 (D.Colo.2004).

■ Contrary to ProLease's position, several Colorado courts have held that, in a tortious interference with prospective business relations case, it is "not necessary that [the plaintiff] identify a specific customer relationship *or* a specific customer" with whom he or she had a prospective relationship. *Ervin v. Amoco Oil Co.*, 885 P.2d 246, 254 (Colo.Ct.App.1994) (emphasis added), *rev'd on other grounds*, 908 P.2d 493, 502 (Colo.1995); *see also Duran v. Clover Club Foods Co.*, 616 F.Supp. 790, 794 (D.Colo.1985) (rejecting the contention that the plaintiffs were required to allege that the defendant interfered with an "ongoing, specific relationship"); *cf. Nat. Wealth Real Estate, Inc. v. Cohen*, No. 05–cv–01233–LTB–MJW, 2006 WL 3500624, at *6 (D.Colo. Dec. 4, 2006) (rejecting argument that "the claim [for tortious interference with prospective economic advantage, i.e., business relations] fails for failure to plead that [defendant] acted for the purpose of interfering with a particular relationship of which he had knowledge" in part by noting that "Colorado, not California law applies to this claim").

---

1. It is undisputed that we look to Colorado    for the governing law.

Notably, ProLease offers no Colorado state case law supporting its contention that knowledge of a prospective business relation is required. Instead, ProLease relies primarily on *National Association of Professional Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143 (10th Cir.2000), which applies Oklahoma law. Suffice it to say that ProLease's reliance on cases applying the law of Oklahoma or other non-Colorado jurisdictions does not significantly advance its cause. Colorado courts are not obliged to follow the law of such foreign jurisdictions in defining the parameters of its legal claims.

Finally, ProLease's reliance on *Seidl v. Greentree Mortgage Co.*, 30 F.Supp.2d 1292 (D.Colo.1998), is misplaced. Although the *Seidl* court noted that "knowledge of the existence of the prospective business relationship" is an element of a Colorado tortious interference with prospective business relations claim, *Seidl*, 30 F.Supp.2d at 1302, the two cases cited by the *Seidl* court in discussing Colorado's adoption of the tort actually involved claims for tortious interference with *existing* contracts. *See Caven v. Am. Fed. Savs. & Loan Ass'n*, 837 F.2d 427, 431 (10th Cir.1988); *Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210 (Colo.1984). Furthermore, although *Seidl* cites to *Amoco* when discussing the tort's elements, *Amoco* provides no support for the proposition that knowledge of the prospective business relationship is an element of the claim. *See Amoco*, 908 P.2d at 500. Thus, ProLease's reliance on *Seidl* is unpersuasive.

We are convinced that Colorado law does not require a tortious interference with prospective business relations plain-

tiff to prove that the defendant had knowledge of a specific potential purchaser. Thus, we conclude that PDI was not required to establish that ProLease knew that Global intended to purchase its assets. Accordingly, we uphold the district court's denial of ProLease's motion of judgment as a matter of law.[2]

### 2. First Amendment Immunity

ProLease also claims that the First Amendment shields it from liability for its tortious interference. We have recognized that the First Amendment shields from liability those who petition the government by invoking judicial process. *See Scott v. Hern*, 216 F.3d 897, 914–15 (10th Cir. 2000); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 889 (10th Cir.2000) (en banc). In *Cardtoons, L.C.*, we detailed the development of the *Noerr–Pennington* doctrine from its genesis in antitrust cases in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), to its application outside the antitrust arena in *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). *Cardtoons, L.C.*, 208 F.3d at 888–89. We noted that because the *Noerr–Pennington* doctrine is based on both antitrust law and the First Amendment, it does not apply broadly outside the antitrust context. *Id.* at 889–90. Rather, in non-antitrust cases, immunity derives solely from the First Amendment right to petition. *Id.* Thus, as we determined in *Scott*, we apply *Noerr–Pennington* immu-

---

2. Because we conclude that PDI had no legal obligation to present proof regarding ProLease's knowledge of the specific potential purchaser, we need not reach ProLease's contentions that (a) there was insufficient evidence of its knowledge of "other suitors"; and (b) it cannot be held liable for tortious interference because it did not know of the prospective contract with Global until negotiations had ceased.

nity to cases outside the antitrust context with caution. *Scott*, 216 F.3d at 914.

Yet, as we acknowledged in *Cardtoons, L. C.*, 208 F.3d at 889, and *Scott*, 216 F.3d at 914, numerous federal and state courts have applied *Noerr–Pennington*—like immunity to state tort claims. Imposing tortious interference liability pursuant to state law could very well impinge a defendant's First Amendment rights to petition the government for redress. *See Scott*, 216 F.3d at 914 (" '[I]t is hard to see any reason why, as an abstract matter, . . . common law torts . . . might not in some of their applications be found to violate the First Amendment.' " (quoting *Whelan v. Abell*, 48 F.3d 1247, 1254 (D.C.Cir.1995))).

Accordingly, ProLease was entitled to plead and prove that it was immune from liability under the First Amendment for its tortious interference. Here, ProLease challenges the district court's denial of its summary judgment motion on its First Amendment immunity defense, arguing that the district court, not the jury, should have decided the issue. ProLease further suggests that the district court erred because the RESTATEMENT (SECOND) OF TORTS § 773's legally protected interest privilege does not adequately protect its First Amendment right to petition. Acknowledging that it did not raise the issue in its motion filed pursuant to Fed.R.Civ.P. 50(a), ProLease nonetheless contends that because the district court's denial of sum-

mary judgment was based on an erroneous interpretation of a pure legal question, it was not required to raise the issue in its Rule 50 motion.[3]

We hold that because questions of material fact merited a decision by the fact finder, the district court did not err in denying ProLease's summary judgment motion. Therefore, to the extent that ProLease contests the district court's resolution of its summary judgment motion, its failure to raise the issue in its Rule 50(a) motion is fatal to its appeal.

### a. Question of Law or Fact

In denying ProLease's motion, the district court recognized that ProLease could avail itself of "the *Noerr–Pennington* immunity defense," but found that issues of material fact precluded summary judgment on whether ProLease's claim was objectively reasonable. Aplt.App. at 517. On appeal, ProLease argues not that the district court must act as a fact finder if factual disputes exist, but that the issue of First Amendment immunity is one of law which must be determined by the district court in every case. ProLease contends that to decide the question of whether ProLease's breach of contract action was objectively reasonable, the district court was required to ascertain only whether the claim had a reasonable factual basis. Accordingly, reasons ProLease, the existence

---

**3.** Although we may review summary judgment rulings based purely on legal questions after final judgment, we may not review denials of summary judgment based on factual disputes. *See Kelley*, 542 F.3d at 820–21; *Wolfgang v. Mid–Am. Motorsports, Inc.*, 111 F.3d 1515, 1521 (10th Cir.1997). Appellate review of an improperly denied motion for summary judgment on the facts is confined to subsequent motions for judgment as a matter of law:

> Because of this critical distinction . . . prudent counsel will not rely on their own interpretations of whether an issue is purely

a question of law or fact. Out of an abundance of caution, . . . counsel should renew summary judgment grounds in a Rule 50 motion . . . at the close of all the evidence, and again, . . . after the jury has returned a verdict. . . .

*Wolfgang*, 111 F.3d at 1521. Failure to move for judgment as a matter of law on an issue of fact at the conclusion of the evidence precludes review of the issue except for "the most manifest error." *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1415–16 (10th Cir.1997); *see Kelley*, 542 F.3d at 820–21.

of any factual disputes did not preclude the district court from determining whether the breach of contract action had a reasonable factual basis. We are not persuaded.

Supreme Court precedent clearly contemplates that when genuine issues of material fact exist regarding a defendant's probable cause to institute the underlying lawsuit, summary judgment on *Noerr–Pennington* immunity is improper. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) [hereinafter *PRE*], an antitrust case, the Court developed "a two-part definition of 'sham' litigation." *PRE*, 508 U.S. at 60, 113 S.Ct. 1920. The Court defined an objectively baseless lawsuit as one for which "no reasonable litigant could realistically expect success on the merits." *Id.* And it determined that when the litigant prosecuting such a lawsuit has the "subjective motivation" to bring the claim for anticompetitive purposes, the lawsuit is a sham lawsuit that is not entitled to *Noerr–Pennington* immunity. *Id.* The Court effectively made the objective-baselessness inquiry the threshold one. In other words, "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.*

Analogizing to the common law tort of malicious prosecution, the *PRE* Court determined that the concept of probable cause is central to the objective-baselessness inquiry. *Id.* at 62–63, 113 S.Ct. 1920. The Court noted that the objective test requires that a defendant must possess "no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Id.* (alteration to original, citation, and internal quotation marks omitted); *see also* Richard M. Brunell, *Sham Litigation Claims May Yet Survive Columbia Pictures*, 8 Antitrust 33, 34 (1994) ("[A] litigant's lack of belief in the factual merits of its case is relevant to the probable cause determination."); *cf.* Restatement (Second) of Torts § 675 ("One who takes an active part in the initiation ... of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based" and, as most relevant here, "correctly or reasonably believes that under those facts the claim may be valid under the applicable law....").[4]

Only "[w]here ... there is no dispute over the predicate facts of the underlying legal proceeding," may a court "decide probable cause as a matter of law." *PRE*, 508 U.S. at 63, 113 S.Ct. 1920; *cf. Bill Johnson's Rest., Inc.*, 461 U.S. at 745, 103 S.Ct. 2161 (holding that although the NLRB may enjoin a state court suit lacking a reasonable basis as an unfair labor practice, if "a genuine issue of material fact that turns on the credibility of witnesses" exists or "inferences [remain] to be drawn from undisputed facts," it may not "usurp the traditional fact-finding function of the state-court jury").

As the cases cited in *PRE* emphasize, the existence of probable cause is often a question of fact. *See Director Gen. of*

4. One commentator has suggested that the *PRE* Court's reliance on the malicious prosecution analogy, and particularly the probable cause concept, imports a subjective feature into the objective-baselessness inquiry because the court is called upon to assess what the litigant actually knew or should have known, or believed to be true. *See* Brunell, *supra*, at 34–35 ("[B]y relying on the malicious prosecution analogy, the Court has incorporated an element of subjectivity into the 'objective' baselessness test.... [A]n element of subjectivity is inherent in the Court's focus on whether 'a reasonable litigant in the defendant's position could realistically expect success on the merits of the challenged lawsuit.'" (quoting *PRE*, 508 U.S. at 63, 113 S.Ct. 1920)).

*R.R.s v. Kastenbaum,* 263 U.S. 25, 28, 44 S.Ct. 52, 68 L.Ed. 146 (1923) (stating that although the salient question is whether the court believes the facts constitute probable cause, "[p]robable cause is a mixed question of law and fact. The court submits the evidence of it to the jury, with instructions as to what facts will amount to probable cause if proved."); *Crescent City Live–Stock Landing & Slaughter–House Co. v. Butchers' Union Slaughter–House & Live–Stock Landing Co.,* 120 U.S. 141, 149, 7 S.Ct. 472, 30 L.Ed. 614 (1887) ("[W]hen there is no dispute of fact, the question of probable cause is a question of law,...."); *Stewart v. Sonneborn,* 98 U.S. 187, 194, 25 L.Ed. 116 (1878) (noting that when a question exists regarding "the defendants' belief of the facts relied upon to prove want of probable cause.... What their belief was is always a question for the jury."); *Nelson v. Miller,* 227 Kan. 271, 607 P.2d 438, 444 (1980) ("If the facts tending to establish the existence or want of existence of probable cause are in dispute, it becomes the duty of the trial court to submit the question to the jury.").

■ Nothing in *PRE* compels us to overrule the venerable principle that juries, not judges, decide disputed questions of fact even when First Amendment immunity is at issue. *See* Brunell, *supra,* at 35 ("[T]he probable cause determination is often not appropriate for summary disposition.... When there is a dispute as to the underlying facts ... the question of probable cause must be submitted to the jury with appropriate instructions."); *cf. Byrd v. Blue Ridge Rural Elec. Co-op., Inc.,* 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) (identifying as an "essential characteristic" of the federal system the distribution of trial functions between judge and jury that "assigns the decisions of disputed questions of fact to the jury"); *Bangert Bros. Constr. Co., Inc. v. Kiewit W. Co.,* 310 F.3d 1278, 1299 (10th Cir.2002) (noting that the Seventh Amendment forbids the district court from substituting "its judgment of the facts for that of the jury" (quoting *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1442–43 (10th Cir.1988))). Our review of the record reveals genuine factual disputes regarding whether ProLease had an objectively reasonable basis to file its Maryland breach of contract action, which precluded the district court from determining the issue as a matter of law.

Most significantly, the parties disputed what Mr. Ramamoorthy knew or reasonably believed about the facts underlying ProLease's breach of contract action when he authorized its filing. For instance, an essential theme of ProLease's breach of contract action was that the LOI contained all of the essential terms of the agreement. Nonetheless, the jury could have viewed Mr. Ramamoorthy's testimony that the parties orally modified the LOI after they executed it as contradicting his claim that ProLease knew or realistically could have expected a finding that the LOI contained all of the essential terms of the parties' agreement. Similarly, Mr. Ramamoorthy testified that Mr. Farah insisted on a binding LOI out of concern that ProLease could renege on its promise to purchase PDI. Mr. Farah denied that he told ProLease that he wanted a binding LOI. It is arguable, then, that Mr. Ramamoorthy either knew or should have known that no court could find that the parties intended to execute a binding LOI, and, consequently, ProLease could not succeed on its breach of contract action. Finally, Mr. Ramamoorthy agreed that he made no effort to ascertain the law relating to letters of intent prior to filing his breach of contract action. PDI claimed that any reasonable litigant having reviewed Maryland law pertaining to letters of intent would not have brought a breach of contract ac-

tion given the facts of this case.[5]

Whether ProLease's breach of contract action was objectively reasonable depends on Mr. Ramamoorthy's understanding of the facts surrounding the LOI's execution and the failed negotiations for a purchase contract. The parties presented starkly different versions of these events. Thus, the question of whether the breach of contract action had merit depends in part on the truth or falsity of Mr. Ramamoorthy's testimony. His testimony, if believed, could certainly establish that ProLease's breach of contract action had merit. However, discounting his testimony, no reasonable litigant could believe that the facts supported a cause of action.

Because a jury gauging Mr. Ramamoorthy's credibility could infer that he either knew or should have known that his suit was baseless or that it had no chance of success on the merits, the district court did not err in determining that it could not decide the First Amendment immunity issue as a matter of law. Consequently, if ProLease intended to challenge the district court's rejection of the issue that it raised in its motion for summary judgment, ProLease was required to raise the issue in its Rule 50(a) motion.

### b. Failure to Adopt ProLease's Proposed Legal Framework

ProLease argues that the district court compounded its legal error in denying summary judgment by rejecting ProLease's proposed *Noerr–Pennington*–like defense in favor of the common law legally protected interest privilege. As we have determined, however, the district court committed no error in denying ProLease's motion for summary judgment. Moreover, the record is clear that ProLease did not

object to the district court's ultimate rejection of its formulation of a First Amendment immunity defense. Therefore, we conclude that it waived review of the issue, and we decline to address it.

In denying ProLease's motion for summary judgment on its *Noerr–Pennington* defense, the district court initially agreed that the defense, as described by ProLease, could apply. Over a year later, however, the district court issued a January 2005 order stating, "(a) there is no cognizable Noerr–Pennington defense in this case and the jury will not be instructed on such a defense; (b) the generalized and qualified right to petition the courts will be addressed in the form of an instruction on a qualified and affirmative defense of privilege...." Aplt.App. at 623.

ProLease contends that the district court's order amounted to rejection of its entitlement to First Amendment immunity. We conclude instead that the district court effectively determined that ProLease's claimed immunity was adequately secured by the RESTATEMENT (SECOND) OF TORTS § 773's legally protected interest privilege.

We recognize that on appeal ProLease vigorously disagrees with that conclusion. More specifically, ProLease underscores that it does not take exception to the content per se of the court's legally protected interest instruction—that is, it does not maintain that the instruction is an incorrect expression of the legally protected interest privilege. Rather, says ProLease, its argument is that the legally protected interest standard was inappropriate and inadequate to protect its First Amendment rights, and, consequently, an instruction concerning it should not have been given to the jury in any form.

---

**5.** As ProLease contends, the Maryland district court's grant of summary judgment in PDI's favor is not, in and of itself, determinative. The Maryland district court's holding cannot be interpreted as a finding that ProLease's case was objectively baseless. Although the court found ProLease's arguments unconvincing, it did not find them baseless.

We decline to reach the merits of Pro-Lease's argument. Our careful review of the record reveals that ProLease did not raise this issue with the district court.[6] When the district court entered its January 28, 2005 order, ProLease was on notice of the district court's repudiation of the framework it proposed to protect its First Amendment rights. Consequently, it was incumbent on ProLease to inform the district court, no later than the submission of the case to the jury, of its concern that the legally protected interest privilege embodied in the court's instructions did not adequately protect its right to petition.

We glean from the district court's remarks that ProLease's proposed jury instructions put at issue the use of the sham litigation standard.[7] *See* Aplt.App. at 619–20 ("With respect to the jury instructions, the disputes over the so-called *Noerr-Pennington* defense ... permeate the jury instructions."). However, these proposed instructions were submitted in early October 2004, over two months *before* the district court issued its January 2005 order, in which the court shifted directions concerning the legal viability of the *Noerr-Pennington* defense. We are unable to discern any indication from the record that following this shift—either prior to or during trial—ProLease objected to the district court's choice to instruct on the legally protected interest privilege on the basis that such instructions would provide inadequate protection for its First Amendment rights. Indeed, to the contrary, the record indicates that after the district court's shift in framework ProLease actively endeavored to shape the language of the court's proposed legally protected interest instructions. Significantly, ProLease went so far as to suggest possible modifications relating to those instructions, without asserting that the legally protected interest privilege (as opposed to the sham litigation standard) would not adequately protect its First Amendment rights. *See* Aplee. Supp.App. at 303–04, 306.

Pursuant to Fed.R.Civ.P. 51(c)(1), "[a] party who objects to ... the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection." *See also Giron v. Corr. Corp. of Am.,* 191 F.3d 1281, 1288–89 (10th Cir.1999) (stating Rule 51 is satisfied not by submitting a proposed instruction but by making a specific, timely objection). "Merely tendering proposed instructions to a court is insufficient to" constitute a proper objection to a jury instruction. *Beaudry v. Corr. Corp. of Am.,* 331 F.3d 1164, 1168 n. 6 (10th Cir. 2003). Notwithstanding the failure to object, "[a] court may consider a plain error in the instructions that has not been pre-

---

6. Generally, we do not consider issues on appeal that were not presented to the district court. *Anderson v. Blake,* 469 F.3d 910, 918 (10th Cir.2006); *see also United States v. Anderson,* 374 F.3d 955, 958 (10th Cir.2004) ("This is not a novel concept. We have held ... that a party may not raise on appeal specific theories he did not present before the district judge."). "The failure to raise the issue with the trial court precludes review except for the most manifest error." *Hicks v. Gates Rubber Co.,* 928 F.2d 966, 970 (10th Cir.1991).

7. ProLease did not include its proposed jury instructions in its appendices, nor were they included in the appendices of PDI. Accordingly, we may only draw clues regarding the contents of those instructions from other pieces of the record. It was ProLease's obligation to provide us with an adequate record for review. *See Milligan-Hitt v. Board of Trustees of Sheridan County School Dist. No. 2,* 523 F.3d 1219, 1231 (10th Cir.2008) ("If the appendix and its supplements are not sufficient to decide an issue, we have no obligation to go further and examine documents that should have been included, and we regularly refuse to hear claims predicated on record evidence not in the appendix.").

served as required by Rule 51(d)(1) if the error affects substantial rights." Fed. R.Civ.P. 51(d)(2).[8] However, this is an endeavor we undertake "if the instructions given were 'patently plainly erroneous and prejudicial,'" *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1212 n. 6 (10th Cir.2000) (quoting *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir.1999)), and we only order a new trial "if an error in the instructions resulted in a 'miscarriage of justice,'" *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1516 (10th Cir.1984), *aff'd on other grounds*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985).

■ ProLease does not demonstrate that the circumstances here are so exceptional as to require reversal in the absence of an objection. We note that ProLease

had ample opportunity in the six month period following the district court's January 2005 order to address this issue. Moreover, ProLease has not argued on appeal that the district court committed manifest error in determining either that the legally protected interest privilege adequately protected ProLease's First Amendment rights or plainly erred in so instructing the jury. Though ProLease has highlighted the differences between the legally protected interest privilege and First Amendment immunity in its appellate submissions, it did not attempt to demonstrate fundamental injustice. Because ProLease "has not asked us to address this issue under the plain error standard, [ ] we decline to do so sua sponte." *United States v. Janus Indus.*, 48 F.3d 1548, 1559 (10th Cir.1995).[9]

**8.** Arguably, ProLease should be categorically barred from availing itself of plain error review because (without reserving an objection concerning the sham litigation standard) it endeavored to influence the content of the court's legally protected interest instruction and proposed a version of such an instruction. Specifically, in doing so, ProLease arguably waived (as opposed to forfeited) an objection to the court's decision to give an instruction embodying the legally protected interest privilege that would have been predicated on the alleged shortcomings of that standard to protect its First Amendment rights. *Cf. Aves By and Through Aves v. Shah*, 997 F.2d 762, 766 (10th Cir.1993) ("Dr. Shah urges a review for plain error. Under the circumstances, we decline to do so. 'A party who requests an instruction invites any error contained therein and, absent an objection before the instruction is given, waives appellate review of the correctness of the instruction.'" (quoting *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1493 (9th Cir. 1986))); see also *Northern Nat. Gas Co. v. Trans Pacific Oil Corp.*, 248 F. App'x 882, 888 (10th Cir.2007) ("Northern did not object to the Special Verdict Form after it was read and submitted to the jury or seek clarification of the verdict before the jury was dismissed. It cannot now assert the form was flawed."); *see generally United States v. Carrasco–Sala-*

*zar*, 494 F.3d 1270, 1272 (10th Cir.2007) (noting that "a party that has forfeited a right by failing to make a proper objection may obtain relief for plain error; but a party that has waived a right is not entitled to appellate relief" (internal quotation marks and emphasis omitted)). We need not, however, decide this point. As noted infra, ProLease has not otherwise demonstrated the existence of circumstances that would trigger our plain error review.

**9.** ProLease's Rule 50(b) motion argued that its interference with PDI's prospective contracts was privileged under the legally protected interest privilege, claiming that the evidence showed that it "had good reason to believe that the Letter of Intent ... constituted a binding agreement" or, in the alternative, that the LOI "obligated the parties to negotiate the sale in good faith." Aplt.App. at 856. However, although ProLease moved for judgment as a matter of law at the close of PDI's case-in-chief under Rule 50(a), it did not raise in this motion a sufficiency-of-the-evidence challenge concerning the legally protected interest privilege. The district court determined that ProLease's failure to raise this issue in a Rule 50(a) motion constituted a waiver of any challenge to "the jury's findings related to their privilege defense."

## B. Denial of Motion for New Trial

ProLease further contends that the district court erred in denying its motion for a new trial. The district court's decision on a new trial motion is reviewed under an abuse of discretion standard. *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir.1999). "Where a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Id.* (internal quotation marks omitted). However, "[w]hen the district court's decision turns on an issue of law, [ ] its determination on that question is reviewed de novo." *Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 514 (10th Cir.1998).

ProLease claims that it is entitled to a new trial because the district court erred in admitting into evidence [10] (1) the Mary-land district court's order, authored by Judge Deborah Chasanow, which granted summary judgment to PDI; and (2) the case of *Phoenix Mutual Life Insurance v. Shady Grove Plaza Partnership*, 734 F.Supp. 1181 (D.Md.1990), *aff'd*, 937 F.2d 603 (4th Cir.1991) (unpublished). We review a district court's evidentiary decisions for abuse of discretion. *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1433 (10th Cir.1993). We will only disturb the district court's ruling if we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *McEwen v. City of Norman*, 926 F.2d 1539, 1553–54 (10th Cir. 1991) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986)).

ProLease does not dispute the relevance of the documents. Instead, relying solely on Rule 403 of the Federal Rules of Evidence,[11] it argues that the opinions

Aplt.App. at 889. We agree with the district court that ProLease waived any challenge to the sufficiency of the evidence to support the legally protected interest privilege. *See Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 738–39 (10th Cir.2007) ("The renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original motion.").

10. In considering ProLease's evidentiary objections, the district court took judicial notice of both the Maryland district court's memorandum opinion and the case of *Phoenix Mutual Life Insurance v. Shady Grove Plaza Partnership*, 734 F.Supp. 1181 (D.Md. 1990). Judicial notice of facts is distinct from judicial notice of law. *See Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 321–22 (1st Cir.2004) (Lipez, C.J., concurring). Judicial notice of facts "is an adjudicative device that alleviates the parties' evidentiary duties at trial, serving as 'a substitute for the conventional method of taking evidence to establish facts.'" *York v. AT & T*, 95 F.3d 948, 958 (10th Cir.1996) (quoting *Grand Opera Co. v. Twentieth Century–Fox Film Corp.*, 235 F.2d 303, 307 (7th Cir. 1956)). In contrast, judicial notice of law is "the commonsense doctrine that the rules of evidence governing admissibility and proof of

documents generally do not make sense to apply to statutes or judicial opinions—which are technically documents—because they are presented to the court as law, not to the jury as evidence." *Getty Petroleum Mktg., Inc.*, 391 F.3d at 322. The district court can judicially notice a matter of law as a matter of fact, "i.e., the court can look to the law not as a rule governing the case before it but as a social fact with evidential consequences." *City of Wichita v. U.S. Gypsum Co.*, 72 F.3d 1491, 1496 (10th Cir.1996). Thus, the law allows the district court to take judicial notice of opinions and case law from other jurisdictions. Notwithstanding, the district court in this case actually admitted the documents at issue into evidence, negating the efficacy of judicial notice as a device to establish disputed facts.

11. The rule provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R.Evid. 403. Prior to trial, ProLease objected that both documents constituted inadmissible hearsay. Because ProLease does not raise

were inadmissible because their probative value was substantially outweighed by their prejudicial effect, in that they were likely to confuse and mislead the jury.[12] More specifically, ProLease asserts: "[A] real danger existed that the jury would conclude that, because Judge Chasanow ultimately held that the LOI was not binding, and because the *Phoenix Mutual* court held that the letter of intent in that case was not binding, ProLease simply could not have had a good faith basis to claim that the LOI was binding at the time it filed suit." Aplt. Op. Br. at 40. We conclude that the district court's admission of the judicial opinions was not an abuse of discretion.

In admitting the opinions, the district court reasoned:

> Now, I think that the—I have said that Judge Chasanow's· decision was not dispositive because there might be some other reason, but it is clearly evidence that this case had no merit. And the citation of the previous case *[Phoenix Mutual Life Insurance]* it was one that was available to—and I don't have to get into the issue of whether it was available to legal counsel or not, but the fact is that the parties are charged with knowing the law, and the law of that district was as set forth in that case. So whether or not Mr. Ramamoorthy didn't know the effects of the existing law, whether he obtained legal advice or not is—that's a matter for him to decide, I suppose whether he wants to or not. But if he didn't know the effects of the law, that's

evidence of willfulness. It's evidence of recklessness and reckless disregard, so it's admissible. So the objections are overruled.

Aplt.App. at 642–43. In abbreviated form, the district court adhered to this reasoning in rejecting ProLease's motion for a new trial. *See id.* at 897 (reasoning that "[u]nder the unique circumstances of this case, where the legal wrong at issue was the allegedly tortious threat and prosecution of the lawsuit itself" ProLease's challenge to the admission of the opinions was "unavailing").

The district court's rationale reflects a permissible exercise of its discretion. The "mindset that ProLease and Ramamoorthy had when they filed" the breach of contract action was a key issue in the case, directly relating to whether they could successfully establish that the action constituted a "bona fide" claim and that their conduct in bringing the action was privileged. Aplee. Supp.App. at 358. The opinions are significant probative evidence of that mindset because they apparently reflected the well-settled law of Maryland concerning the non-binding nature of letters of intent, and insofar as ProLease and Mr. Ramamoorthy disregarded that law it was germane to whether they possessed a "good faith" belief that they had a legally protected interest. *Id.*

To be sure, we have indicated that the admission into evidence of prior judgments and judicial opinions might be problematic because juries would be likely to give un-

---

this argument on appeal, we deem it to be waived. *See Wyoming v. Livingston,* 443 F.3d 1211, 1216 (10th Cir.2006), *cert. denied,* 549 U.S. 1019, 127 S.Ct. 553, 166 L.Ed.2d 409 (2006); *Silverton Snowmobile Club v. U.S. Forest Serv.,* 433 F.3d 772, 783 (10th Cir. 2006).

**12.** ProLease's additional argument that the judicial opinions were cumulative in light of

the jury instructions that informed the jury that a prior determination had been made that it had no legally protected interest may be summarily rejected. As PDI rightly notes, as relevant here, Rule 403's concern is evidence that is cumulative of other *evidence. See, e.g., Joseph v. Terminix Intern. Co.,* 17 F.3d 1282, 1284–85 (10th Cir.1994). Jury instructions are not evidence. Accordingly, ProLease's argument is wholly without merit.

due weight to them. *See Johnson v. Colt Indus. Operating Co.*, 797 F.2d 1530, 1538 (10th Cir.1986) ("[T]he admission of a judicial opinion as substantive evidence presents obvious dangers. The most significant possible problem ... is that the jury might be confused as to the proper weight to give such evidence."). But the concern appears to have centered on whether the jury would construe the opinions as *resolving* by judicial declaration *key disputed factual issues* in the case. *See id.* at 1535 (discerning error in the district court's admission of a judicial opinion as substantive evidence in a products liability case litigating the alleged improper discharge or "drop-fire" of firearm, where the opinion involved the drop-fire of a similar firearm and "may have helped the jury to decide that the gun model was likely to drop-fire"); *Herrick v. Garvey*, 298 F.3d 1184, 1192 (10th Cir.2002) (noting the admission of prior judgments or findings of fact under Rule 803(8) is questionable because "[j]uries are likely to give disproportionate weight to such findings of fact because of the imprimatur that has been stamped on them by the judicial system"); *accord Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994) (concluding, in a civil rights case against a prosecutor and police officer based on their failure to disclose exculpatory evidence in the plaintiff's criminal trial, that the trial court properly excluded a state court's opinion that "decided the precise issue before the jury [which] thereby ma[de] it likely that the jury would have placed undue weight on such evidence").

However, that is not the situation here. As noted, the opinions were expressly introduced into evidence as bearing on the mindset of ProLease and Mr. Ramamoorthy in bringing the breach of contract action and, more specifically, on whether they recklessly disregarded established Maryland law concerning the non-binding nature of letters of intent. Judge Chasanow's opinion and *Phoenix Mutual Life Insurance* made no findings of fact concerning these key issues. In particular, Judge Chasanow's decision simply dismissed ProLease's action, finding that the LOI was not binding; she did not render findings concerning the mindset of ProLease and its principal, Mr. Ramamoorthy, in bringing the action. And *Phoenix Mutual Life Insurance*, involving unrelated litigation, certainly did not issue factual findings directly resolving matters in this case; instead, it merely spoke generally as to the state of Maryland's law concerning the non-binding nature of letters of intent.

As for the purported "real danger" that the jury nonetheless would (erroneously) infer from these opinions that the key factual issues concerning the mindset of ProLease and Ramamoorthy had been effectively resolved by the courts against them and therefore that no further decision-making on them was needed by the jury, the court's instructions were expressly designed to negate the materialization of that danger. The court instructed the jury:

A claim is "bona fide" if the person asserting it has, or honestly believes he has, a legally protected interest. The fact a court ultimately determined a claimed interest was not legally protected does *not* mean the claim was not "bona fide" under this standard. Because it has already been determined in this case that ProLease did not have a legally protected interest to purchase PDI under the Letter of Intent, your task in determining whether the claim was nevertheless "bona fide" is to assess the mindset that ProLease and Ramamoorthy had when they filed it. If you find they had an honest, or good faith, belief that they had a legally protected interest under the Letter of Intent for the purchase of PDI, then the claim was "bona fide" at the time it was filed *even*

*though it was ultimately rejected by the Maryland court.*

Aplee. Supp.App. at 358 (emphasis added). The district court therefore expressly limited the jury's consideration of the Maryland judicial opinions, particularly underscoring that the opinions did not control the jury's resolution of the key factual issue of the mindset of ProLease and Mr. Ramamoorthy when they filed the breach of contract action.

Furthermore, ProLease is hard-pressed to argue here that this instruction did not adequately protect it from its feared prejudice because ProLease never offered a substitute or additional instruction channeling and limiting the jury's consideration of the opinions. *Cf. Johnson,* 797 F.2d at 1535 ("[I]t is significant that appellant's trial counsel made only a general objection to the admission of the opinion and later refused the court's offer to give appropriate limiting instructions to the jury. Counsel ... cannot complain of what he now perceives as the pervasive prejudicial effect of the opinion ...."); *id.* at 1538 (McKay, J., concurring) (noting defendant's adoption of "an all-or-nothing objection" to admission of the judicial opinion and consequent "failure to propose a limiting instruction or to request deletions from the opinion" was damning to any claim by defendant of unfair prejudice). Accordingly, we conclude that the district court did not abuse its discretion in striking the Rule 403 probative-prejudice balance under the circumstances of this case in admitting the Maryland judicial opinions.

## C.  The Maryland District Court's Summary Judgment Order

ProLease seeks appellate review of the Maryland district court's order granting PDI's motion for summary judgment on ProLease's breach of contract claim. PDI filed a motion for partial dismissal of the appeal on the ground that we lack jurisdiction to review the Maryland district court's summary judgment order. We agree.

■ We have no jurisdiction to review the order of the Maryland district court. *McGeorge v. Cont'l Airlines, Inc.,* 871 F.2d 952, 954 (10th Cir.1989). In *McGeorge,* the District of Columbia district court dismissed plaintiff's federal claim and transferred the remaining pendent state law claims to the Western District of Oklahoma. On appeal from the Oklahoma district court's dismissal, the plaintiff also sought review of the District of Columbia court's dismissal order. We concluded that, pursuant to 28 U.S.C. § 1294(1), we may exercise appellate jurisdiction only from decisions rendered by courts within our own circuit. *Id.* We further found that section 1294(1) applies to all "reviewable" decisions of the district courts, not just those that are immediately appealable. *Id. McGeorge* is factually indistinguishable from this case. Thus, we may not exercise appellate jurisdiction over the Maryland district court's decision.

## II.  PDI's Cross–Appeal

PDI cross-appeals, claiming that the district court erred in refusing to award it prejudgment interest pursuant to Colo. Rev.Stat. § 5–12–102(1)(b).[13] We, like the

---

**13.**  Section 5–12–102 provides:

> (1) Except as provided in section 13–21–101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
>
> (a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of

the wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

> (b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or

district court, apply Colorado law regarding prejudgment interest. *See Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1288 (10th Cir.2005). Though we review the district court's award of prejudgment interest for abuse of discretion, we review "any statutory interpretation or legal analysis underlying such an award" de novo. *Id.* "Whether a particular factual circumstance falls within the terms of the prejudgment interest statute is a question of law reviewed de novo." *Id.* (citing *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1233 (10th Cir. 2000), *aff'd on other grounds*, 532 U.S. 588, 121 S.Ct. 1776, 149 L.Ed.2d 845 (2001)). Applying these standards of review, we conclude that the district court erred in refusing to award PDI prejudgment interest.

In denying PDI's claim for prejudgment interest, the district court noted that prejudgment interest is available in tortious interference with prospective business relations cases and that PDI preserved its right to request prejudgment interest. We agree.

Section 5–12–102 "serves to discourage delay of payment of a claim," *Colwell v. Mentzer Invs., Inc.*, 973 P.2d 631, 641 (Colo.Ct.App.1998), and "is to be liberally construed to permit recovery of prejudgment interest on money or property wrongfully withheld." *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 684 (Colo.1994). Therefore, a party seeking prejudgment interest under section 5–12–102(1)(b) must prove only that money or property was wrongfully withheld. *See Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 364 (Colo.1989). Courts have awarded prejudgment interest on tort judgments in general, *see Frontier Exploration, Inc. v. Am. Nat'l Fire Ins. Co.*, 849 P.2d 887, 893 (Colo.Ct.App.1992), and in tortious interference with contract cases in particular,

*see Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1119–20 (Colo.1990).

"[S]ection 5–12–102 'is to be read broadly to cover all types of cases, even where the withholding is merely a refusal to pay over damages which are theoretically due at the time the claim arises.'" *Mesa Sand & Gravel Co.*, 776 P.2d at 365 (quoting Cairns & Tredennick, *Collecting Pre and Post-Judgment Interest in Colorado: A Primer*, 15 COLO. LAW 753, 756 (1986)); *see Ballow*, 878 P.2d at 684 ("Section 5–12–102(1)(b) is to be liberally construed to permit recovery of prejudgment interest on money or property wrongfully withheld."). Thus, for purposes of determining whether a plaintiff is entitled to prejudgment interest, we see little difference between a claim for tortious interference with an existing contract (where Colorado has awarded prejudgment interest) and a claim for interference with a prospective contract. The money PDI lost when Pro-Lease interfered with its prospective business relationship with Global was money wrongfully withheld by ProLease just as if ProLease had induced Global to breach an existing purchase contract.

We disagree with the district court, however, that PDI is not entitled to prejudgment interest in this case. PDI argues that, once the district court determined that its claim supported an award of prejudgment interest, it was without discretion to refuse to award interest. A review of relevant Colorado cases demonstrates that courts have applied section 5–12–102 in a mandatory fashion.

In *Wall v. Foster Petroleum Corp.*, 791 P.2d 1148, 1151 (Colo.Ct.App.1989), in an action to rescind a contract, the defendant argued that because rescission is an equitable remedy, the trial court had discretion in determining appropriate relief for the

to the date judgment is entered, whichever       first occurs.

parties, including whether to award prejudgment interest. The appellate court rejected the contention holding that section "5–12–102 requires that prejudgment interest be awarded where, as here, money is wrongfully withheld. Consequently, such an award must be incorporated in the court's assessment of the equities." *Id.;* *see also Kennedy v. Gillam Dev. Corp.,* 80 P.3d 927, 931 (Colo.Ct.App.2003) ("[W]e conclude that § 5–12–102 required the trial court to award prejudgment interest."); *Town of Breckenridge v. Golforce, Inc.,* 851 P.2d 214, 217 (Colo.Ct.App.1992) ("[W]e hold that, if a court finds that a claimant is entitled to statutory interest under § 5–12–102, the court should award it, even in the absence of a prayer for relief.").[14]

This mandatory application of the statute is consistent with its plain language. Section 5–12–102 provides that "creditors *shall* receive interest," and that "[i]nterest *shall* be at the rate of eight percent ... for all moneys or the value of all property after they are wrongfully withheld or after they become due...." COLO.REV.STAT. § 5–12–102 (emphasis added). If the statutory language is clear, Colorado law dictates that we apply its plain and ordinary meaning. *Williams v. Kunau,* 147 P.3d 33, 36 (Colo.2006). "The use of the word 'shall' in the statute is presumed to indicate a mandatory requirement." *Aren Design, Inc. v. Becerra,* 897 P.2d 902, 904 (Colo.Ct.

App.1995); *see also People v. District Court,* 713 P.2d 918, 921 (Colo.1986). "Under the plain language of § 5–12–102(1)(b), [PDI] is entitled to the time value of [the money ProLease retained] during the period in which [it was] wrongfully withheld."[15] *Echo Acceptance Corp. v. Household Retail Servs., Inc.,* 267 F.3d 1068, 1092 (10th Cir.2001).

We further disagree with the district court's holding that PDI was not entitled to prejudgment interest because it failed to adduce adequate evidence to guide the court in determining when the claim for interest accrued. In "a matter of first impression," the Colorado Supreme Court recently "s[ought] to clarify the distinction between the date a plaintiff is 'wronged' and the time at which a 'wrongful withholding' occurs, for purposes of section 5–12–102(1)(b)." *Goodyear Tire & Rubber Co. v. Holmes,* 193 P.3d 821, 829–30 (Colo. 2008). In framing its analysis the *Goodyear* court observed: " '[W]rongful withholding' occurs at the time when plaintiff's injury is measured. Prejudgment interest compensates the prevailing party for the time value of money losses caused by inflation and inability to earn a return on the money or property due to plaintiff as a result of the injury." *Id.* at 828–29. Underscoring that " 'wrong' and the 'wrongful withholding' are separate concepts," the court reasoned:

---

**14.** We find PDI's cited authority inapposite. The cases on which PDI relied to demonstrate the mandatory nature of the statute—*James v. Coors Brewing Co.,* 73 F.Supp.2d 1250, 1254 (D.Colo.1999), and *Todd v. Bear Valley Village Apts.,* 980 P.2d 973, 980–81 (Colo.1999)—interpret § 13–21–101(1), which provides, in personal injury cases, *"it is the duty of the court in entering judgment* for the plaintiff," to add interest to the damages award. COLO.REV. STAT. § 13–21–101(1) (emphasis added). According to these courts, the emphasized language mandates an award of prejudgment interest in every personal injury case. Sec-

tion 5–12–102 does not contain the operative language of section 13–21–101(1).

**15.** Similar to the district court in this case, the district court in *Echo Acceptance Corp.* awarded less than the prejudgment interest to which the prevailing party was due because of the length of time during which prejudgment interest accrued. We rejected this approach stating "we are constrained by the statute" to award interest calculated at the statutory rate. *Echo Acceptance Corp.,* 267 F.3d at 1082. We likewise reject the district court's identical rationale for refusing to award PDI prejudgment interest here.

The time when the plaintiff is "wronged" may or may not be the same time when the plaintiff's money or property is "wrongfully withheld." The plaintiff is wronged when he suffers an injury caused by the defendant. However, "wrongful withholding" occurs when plaintiff's injury is measured because the damages, if then paid, would make the plaintiff whole. Therefore, the date of the "wrong" is the same as the date of "wrongful withholding" only where the damages are measured as of the date of the injury. If, however, the damages are measured as of a date subsequent to the date of the injury, "wrongful withholding" occurs some time after the plaintiff was "wronged." Because section 5–12–102(1)(b) awards prejudgment interest from the date of "wrongful withholding," the prejudgment interest accrual date depends on the measure of damages insofar as different measures of damages may quantify the plaintiff's injury as of different dates.

*Id.* at 827, 829–30.

■ In this case, the date of "wrongful withholding" is clear. When Global walked away from the deal due to Pro-Lease's refusal to dismiss its breach of contract action, damages for ProLease's tortious interference with that relationship could be measured and were theoretically due. Given the nature of this case,[16] we conclude that PDI suffered actual injury when ProLease's ongoing lawsuit interfered with PDI's prospective relationship with Global resulting in PDI's loss of opportunity. On August 16, 1999, Global suspended negotiations for the purchase of PDI's assets. On August 18, 1999, PDI informed ProLease that the lawsuit was interfering with a prospective August 27, 1999 sale and asked that ProLease dismiss its suit by August 24, 1999. Therefore, PDI was actually damaged on August 27, 1999 when ProLease refused to dismiss its case and Global refused to purchase PDI's assets.

Therefore, we hold that PDI is entitled to prejudgment interest on $2,569,682.00— the amount of compensatory damages[17] the jury awarded—calculated from the date the Global sale would have occurred, August 27, 1999.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment and **GRANT** PDI's motion for partial dismissal for lack of appellate jurisdiction. We further **REVERSE** the district court's order denying PDI's request for prejudgment interest and **REMAND** for further proceedings consistent with this opinion.

## ORDER

This appeal and cross-appeal are before the court based on Appellee–Plaintiff The Personnel Department's motion pursuant to Fed. R.App. P. 37(b) to reform the mandate to include instructions allowing for post-judgment interest to Plaintiff on the forthcoming award of prejudgment interest from the date of the original judgment entered by the district court on August 25, 2005. Also before the court is a timely verified bill of costs pursuant to Fed. R.App. P. 39 from Plaintiff seeking $1,284.40 for costs incurred for producing

---

16. PDI maintains that it is entitled to interest calculated from the date on which ProLease filed its breach of contract action. We disagree. Even if we were to find that PDI was "wronged" when ProLease filed its action, the "wrongful withholding" undeniably occurred on August 27, 1999, which is "when [PDI's] injury is measured." *Goodyear Tire & Rubber Co.,* 193 P.3d at 827.

17. "[P]rejudgment interest is not allowed on" punitive damages. *Frontier Exploration, Inc.,* 849 P.2d at 893.

necessary copies of the briefs and appendices. Appellants–Defendants do not object to either the motion to reform or the verified bill of costs.

In *The Personnel Department v. Professional Staff Leasing Corp.,* 2008 WL 4698479 (10th Cir. Oct.27, 2008) (unpublished), this court, in relevant part, affirmed the district court's judgment awarding Plaintiff compensatory and punitive damages, reversed the district court order denying Plaintiff's request for prejudgment interest, and remanded for an award of prejudgment interest to Plaintiff. The decision did not contain instructions regarding an award of post-judgment interest on the prejudgment interest award or an award for appeal-related costs.

Upon consideration, Plaintiff's motion to reform the mandate is **GRANTED**. The mandate issued November 18, 2008 is **RECALLED**.

Upon further consideration, Plaintiff's verified bill of costs is **GRANTED** for the total amount of $1,284.40. To the extent reimbursement is sought by Plaintiff for costs taxable in the district court, such as filing fees, Plaintiff may file an appropriate motion in the district court. *See* Fed. R.App. P. 39(e). We conclude that Plaintiff is "the party entitled to costs" within the meaning of that Rule.

This court's October 27, 2008 Order and Judgment is *amended* to instruct the district court to award post-judgment interest to Plaintiff on the award of prejudgment interest from the date of the original August 25, 2005 Judgment and to award $1,284.40 in appeal-related costs to Plaintiff.

A new mandate consistent with this order shall issue forthwith.